[Civ. No. 33947. First Dist., Div. Four. Jan. 21, 1976.]

SHELLEY MANDEL, Plaintiff and Respondent, v.
FREDERICK B. HODGES, as Director, etc., et al.,
Defendants and Appellants.

600

## COUNSEL

Evelle J. Younger, Attorney General, Elizabeth Palmer, Assistant Attorney General, John J. Klee, Jr., and Sheridan H. Brown, Deputy Attorneys General, for Defendants and Appellants.

Crimmins, Kent, Bradley, Burns & Kaplan, Richard M. Kaplan and Ephraim Margolin for Plaintiff and Respondent.

J. Anthony Kline as Amicus Curiae.

## OPINION

**RATTIGAN, J.**—In her action against appellants for declaratory and injunctive relief, respondent Shelley Mandel took a judgment ("Judgment And Writ Of Mandate") which enjoins the Governor from

ordering the closure of State offices on Good Friday between the hours of noon and 3 p.m., and from granting State employees paid time off during the three-hour period; enjoins the Controller from paying the employees for time taken off from work during the period; and awards respondent's counsel $25,000 as attorneys' fees in the action, and her costs, payable by the State.[1] We initially affirmed the judgment, but granted rehearing because of valid questions and arguments raised in appellants' petition therefor. Some of the arguments attributed to them herein were made in the petition.

## I. *The Trial Court's Pertinent · Findings and Conclusions*

As mentioned in the judgment (see fn. 1, *ante*), and with respect to the constitutional questions presented, the trial court found upon substantial evidence as follows:

---

[1]As pertinent to our review of the judgment on appeal, it states:

". . . [T]he Court having heretofore made and caused to be filed its written Findings of Fact and Conclusions of Law, and the Court having found that the practice heretofore followed of closing State offices, and paying State employees for the hours of 12 noon to 3:00 P.M. on Good Friday is unconstitutional under both the First Amendment of the United States Constitution and Article 1, Section 4 of the California Constitution, and that said. practice would continue if not enjoined, and Petitioner being entitled to a declaration of her rights by judgment of this Court and its Writ of Mandate, now, therefore,

."IT IS HEREBY ORDERED, ADJUDGED AND DECREED as follows:

"1. That . . . [the] . . . Governor of the State of California, be, and he hereby is, enjoined and restrained from closing State offices, not including a lunch break, between the hours of 12 noon and 3:00 P.M. on Good Friday, commencing on April 20, 1973, and on subsequent days of Good Friday annually thereafter and from granting employees of the State of California the said three hours off without reduction in pay, using vacation credits or making up the time.

"2. That . . . [the] . . . Controller of the State of California be, and he hereby is, enjoined and restrained from paying State employees salaries or other benefits from funds of the State of California during the said period of 12 noon to 3:00 P.M. on Good Friday, not including a lunch break, commencing on April 20, 1973, and on subsequent days of Good Friday annually thereafter for time taken off from work during said hours and he is enjoined and restrained from granting employees of the State of California the said three hours off without reduction in pay, except through the use of vacation credits, or making up the time.

". . . . . . . . . . . . . . . . . . . . . .

"4. . . . [Appellants] . . . shall pay to . . . [respondent's attorneys] . . . the sum of $25,000.00 as and·for attorneys' fees for the prosecution of this action, and shall further pay to them all costs and disbursements incurred, in the sum of $176.01.

"5. That this Court does not have before it and this Judgment and Writ of Mandate do not decide, and there remains open, the question of the effect of this decision on Code of Civil Procedure Section 134 relating to the suspension of judicial business on State holidays, including the Good Friday hours of 12 noon to 3:00 P.M."

"6. Respondents Department of Public Health and State of California [2] close their offices between the hours of 12:00 noon and 3:00 P.M. on Good Friday without reduction in pay to State employees.

". . . . . . . . . . . . . . . . . . .

"11. The practice of permitting employees of respondent Department of Public Health and State of California to take off work on the aforesaid hours of Good Friday without reduction in pay was carried out in 1972 and for at least fifteen years prior to the filing of Petitioner's action pursuant to order of three successive Governors of this State acting in accordance with purportedly discretionary power granted to them. The record reflects that no change of the Governor's past practice of closing State offices on Good Friday has been undertaken.

"12. An actual controversy exists between Petitioner and Respondents as to her rights under law, Petitioner has sought declaratory relief as to her rights by judgment of this Court, and she has further sought a writ of mandate of this Court directing Respondents to act in accordance with law.

"13. Good Friday is a wholly religious day, of solemn character, and the hours of 12 noon to 3:00 P.M. on said day have a special religious significance which is profoundly rooted in Christian theology, and is an annual event. [3]

"14. Yom Kippur is a wholly religious day of solemn character in which a Jew is called upon to spend time in worship, to fast, and to avoid work, and said holiday is an annual event.

---

[2]The State Department of Public Health, the State of California as such, and the other appellants (the State Personnel Board and its individual members, the Governor, and the Controller) are identified as "respondents" in the trial court's findings of fact and conclusions of law because they were named and appeared as "respondents" in the pleadings. Shelley Mandel, respondent on the appeal, is designated "petitioner" in the findings and conclusions because she commenced the action as such. She named the State Department of Public Health and its director as "respondents" in the action because she works as a State employee in the service of that agency.

[3]The trial court did not resort to judicial notice in making this finding, as it might well have done. (See, e.g., The Oxford Dictionary of the Christian Church (Oxford Univ. Press 1957) pp. 570-571; Dictionary of Comparative Religion (Charles Scribner's Sons 1970) p. 310; 4 Encyclopedia Britannica (15th ed. 1974, Micropaedia), p. 628.) The finding was based upon a comprehensive declaration by a minister of a Christian religion. His qualifications to testify in this regard have not been challenged by appellants, nor have they contradicted his declaration, at any point in the proceedings.

"15. Pursuant to the said annual order of Respondent Governor, State offices are closed during the hours of 12 noon to 3:00 P.M. on Good Friday and employees of Respondent State of California are paid for said period of time; there is no similar practice as to Yom Kippur or other holidays of faiths other than Christian."

From these findings, none of which is disputed, the trial court drew the following "Conclusions of Law":

"1. Respondents Department of Public Health and State of California have granted their employees time off from work annually for many years on Good Friday between the hours of 12 noon and 3:00 P.M. without reduction in pay, pursuant to executive order of Respondent Governor acting under the provisions of Government Code Sections 6700 and 18025.

"2. Respondents have failed and refused to grant the same treatment to Petitioner and others similarly situated with regard to Yom Kippur and other religious holidays of religions other than the Christian religion.

"3. The said discretionary power exercised by the Governor in said manner is purportedly pursuant to a delegation of power granted by the State Legislature, but the said Legislature does not itself possess the authority to prefer one religion over another or [to] establish a religion, and therefore cannot confer upon Respondent Governor the power to do so.

"4. Paying of State employees for taking off from work on Good Friday, pursuant to said executive order, violates the First Amendment of the United States Constitution because the State, by reason of the Fourteenth Amendment to said Constitution, is prohibited from making any law respecting the establishment of religion; said action further violates Article I, Section 4 of the California Constitution, in that it constitutes discrimination and preference of one religion over others.

". . . . . . . . . . . . . . . . . . . .

"11. The holiday effect of the days specified in Government Code Section 6700 is not reached, but rather, this decision relates to the practice of granting State employees time off with pay on Good Friday pursuant to the discretionary power granted to the Governor. There also remains open the question of the effect of the judgment rendered herein

on Code of Civil Procedure § 134 relating to the suspension of judicial business on State holidays, including the Good Friday hours of 12 noon to 3:00 P.M."[4]

## II. *The Practices Enjoined By The Judgment*

Before we address the constitutional questions presented, we find it necessary to define their reach by analyzing the practices which the trial court described in its findings and conclusions and enjoined in the judgment. It is clear from the record, first, that the practice of the Controller in paying State employees for time taken off from work during the three-hour period of Good Friday, which practice is enjoined in paragraph 2 of the judgment (see fn. 1, *ante*), is ancillary to the execution of the Governor's order, closing State offices during the period, which is enjoined in paragraph 1. (See *ibid.*) The validity of the full range of government action challenged by respondent, and enjoined by the judgment upon constitutional grounds, is therefore dependent upon the validity of the Governor's order.

Although the record frequently refers to the order as a "proclamation" by the Governor, declaring a "holiday" during the Good Friday period, it may not literally read in such ceremonial terms. In recent years, it has been issued by "The Governor's Office" in the form of a brief letter which was circulated among designated levels of State government, directed only that State offices would be "closed" during the three-hour period, and made no mention of a "holiday."[5] These facts and their effect are to be assessed in accordance with the complicated—and

---

[4]The second sentence of conclusion of law No. 11 accounts for, and is reiterated in, the exclusionary provision of the judgment stated in paragraph 5 thereof. (See fn. 1, *ante.*) As pertinent here, Code of Civil Procedure section 134 provides: "No court, other than the Supreme Court and the courts of appeal, shall be open for the transaction of judicial business on *any day specified or provided for as a holiday* by Chapter 7 (commencing with *Section 6700*) of Division 7, Title 1 of the Government Code other than a special holiday . . . ." (Italics added.)

[5]In each of the two years preceding the trial court's decision, the letter read as follows:
". . . [Date] . . .
"TO: CONSTITUTIONAL OFFICERS, HEADS OF AGENCIES, DEPARTMENTS, MAJOR UNITS AND OTHER KEY PERSONNEL
"FROM: THE GOVERNOR'S OFFICE
"ALL STATE Offices WILL BE CLOSED BETWEEN 12:00 NOON AND 3:00 P.M. ON GOOD FRIDAY, . . . [date] . . . .
". . . [Signature] . . .
"Executive Assistant
to the Governor"

disorganized—statutory context, relative to "holidays," in which they have occurred. The pertinent statutes are quoted in the margin.[6]

The provisions of section 6700 designating certain days as "holidays in this state" do not "have any operative effect"; they are "passive in nature—dependent upon other legislative enactments for any legal significance." (33 Ops.Cal.Atty.Gen. 37, 38 (1959); 57 Ops.Cal.Atty.Gen. 641, 642 (1974).) Section 6703 thus imparts some "legal significance" to two provisions of section 6700 by expressly requiring that all offices of

---

[6]Except where otherwise indicated all statutory references herein are to the Government Code. As pertinent to this action in point of time, the indicated sections thereof read as follows (some paragraphing omitted; all italics added):

"6700. *The holidays in this state* are: (a) Every Sunday. (b) January 1st. (c) February 12th, known as 'Lincoln Day.' (d) The third Monday in February. (e) The last Monday in May. (f) July 4th. (g) First Monday in September. (h) September 9th, known as 'Admission Day.' (i) The second Monday in October, known as 'Columbus Day.' (j) The fourth Monday in October, known as 'Veterans Day.' (k) December 25th. *(l) Good Friday from 12 noon until 3 p.m.* (m) Every day on which an election is held throughout the state. (n) Every day *appointed* by the President *or Governor for a public* fast, thanksgiving, *or holiday*. . . .

"6703. Public offices of the State, state institutions, and the University of California shall be closed on Admission Day. Public offices of the State and state institutions, except the University of California, shall be closed on Veterans Day.

"6705. A special or limited holiday is a holiday applying only to a special class or classes of business, or a special class or classes of persons, and not appointed to be generally observed throughout the State by all classes of business and all classes of persons. On any *special or limited holiday appointed* by the President *or Governor*, all courts and public offices of the State, any political subdivision, or any city, shall be open and function in their normal and usual manner. All other public functions shall be performed as on days which are not holidays, and all contracts shall be performed and business transacted as usual, except only as to or by the particular class of business or persons expressly limited or restricted by the provisions of the *proclamation appointing or declaring* such special or limited holiday.

"11020. Unless otherwise provided by law, all offices of every state agency *shall be kept open* for the transaction of business from 8 o'clock a.m. until 5 o'clock p.m. of each day from Monday to Friday both inclusive, *other than legal holidays* . . . .

"18025. All employees [of the State] shall be entitled to the following holidays: the first day of January, the 12th day of February, the third Monday in February, the last Monday in May, the fourth day of July, the first Monday in September, the ninth day of September, the second Monday in October, the fourth Monday in October, the 25th day of December, every day on which an election is held throughout the state, and every day *appointed by the Governor of this state for a public* fast, thanksgiving, *or holiday*. When a day listed herein falls on a Sunday, the following Monday shall be deemed to be the holiday in lieu of the day observed. Any employee who may be required to work on any of the holidays herein mentioned, and who does work on any of said holidays, shall be entitled to be paid compensation or given compensating time off for such work within the meaning of this article. For the purpose of computing the number of hours worked, time during which an employee is excused from work because of holidays, sick leave, vacation, or compensating time off, shall be considered as time worked by the employee."

the State are to be closed on one of the designated days ("Admission Day"), but that only some of them shall be closed on another ("Veterans Day"). (See § 6700, subds. (h) and (j).) Section 11020 produces the same effect by indicating that all of them shall be closed on "legal holidays," a term which may be construed to include both the three-hour period of Good Friday declared to be among the "holidays in this state" in subdivision *(l)* of section 6700 and any day "appointed by the . . . Governor for a public fast, thanksgiving, or holiday" pursuant to subdivision (n) thereof. (See *Vidal* v. *Backs* (1933) 218 Cal. 99, 104-105 [21 P.2d 952, 86 A.L.R. 1134]; *Laubisch* v. *Roberdo* (1954) 43 Cal.2d 702, 709-710 [277 P.2d 9]; 40 C.J.S., Holidays, § 1, p. 410.)

However, the statutes designating "holidays in this state" as such (§ 6700), or days upon which State offices shall be "open" (§ 11020) or "closed" (§ 6703), do not specify the days upon which State employees are entitled to time off with pay. These days are listed in section 18025, where the Legislature has (1) designated the "holidays" to which State "employees shall be entitled" and (2) provided in effect that they shall be paid for time taken off from work on those days. (See the last two sentences of section 18025 as quoted in fn. 6, *ante.*) Of significance in the present case is the fact that section 18025 reiterates the catalog of "holidays in this state" which appears in section 6700, but with the conspicuous *exception* of "Good Friday from 12 noon until 3 p.m." which is designated as one of those "holidays" in subdivision *(l).*

The only link among these disparate provisions is the Governor's statutory power to declare a given day "appointed . . . for a public . . . holiday," with which the Legislature has vested him in section 6700, subdivision (n), and in section 18025 alike.[7] When he exercises this power as to a particular day, his action—depending upon its terms—may make the day a "holiday in this state" pursuant to section 6700, subdivision (n), or a "holiday" to which State "employees shall be entitled" to paid time off under section 18025, or a "legal holiday" upon which section 11020 permits the closure of State offices, or all three of these things.

---

[7]Section 6705 grants him a similar power to declare a given day "appointed" as a "special or limited holiday" (see its text as quoted in fn. 6, *ante*), and we have cited and quoted it because of its pertinence to the statutory scheme within which the Governor is empowered by the Legislature to declare a "holiday" of any nature. Section 6705 otherwise has no application in the present case because a "special or limited holiday" which it empowers the Governor to declare "appointed" may not be a paid holiday for State employees: it expressly requires that "public offices of the State . . . shall be open and function in their normal and usual manner" on such days. (See *ibid.*)

In the present case, each of the annual orders of the successive Governors (see the trial court's findings. 11 and 15, quoted *ante*) produced all three results as to the three-hour period of Good Friday, but in an inverted sequence, as follows: (1) The language of each order directed the closure of State offices during the period (see fn. 5 and accompanying text, *ante*), which made the period a "legal holiday" for that purpose pursuant to section 11020. (2) Although its language went no further in express terms, it necessarily made the period a "holiday in this state" within the meaning of section 6700, subdivision (n), which effect was declaratory only. (3) More significantly, it made the period a "day appointed by the . . . Governor for a public . . . holiday" within the meaning of section 18025 and, therefore, one of the "holidays" upon which State employees were "entitled" to time off from work, with pay, pursuant to the same section.

Our analysis produces these further conclusions which are relevant to the constitutional questions presented: The paid "holiday" given State employees, during the three-hour period of Good Friday, has not resulted from the Legislature's designation of the period as one of the "holidays in this state" in section 6700, subdivision *(l)*. It has occurred because the Governor has "appointed" the period "for a public . . . holiday" pursuant to his discretionary power, to do this, with which the Legislature has vested him in subdivision (n) of section 6700 and in section 18025.[8] By granting him this power in the specific statutes mentioned, the Legislature has imparted "operative effect" and "legal significance" (which appear when he exercises the power) to the otherwise "passive" provisions of section 6700 which have no "operative effect" in themselves. (33 Ops.Cal.Atty.Gen. 37, *supra,* at p. 38; 57 Ops.Cal.Atty.Gen. 641, *supra,* at p. 642.) It thus appears that the governmental action which is primarily subject to respondent's constitutional challenge is the *executive* action taken by the Governor, relative to Good Friday and in his discretion, but in the exercise of a power vested in him by *legislative* enactments.

### III. *The Purpose Of The Order*

It must also be observed that the executive action taken in the Governor's Good Friday order has not reflected a personal judgment on

[8]This is what the trial court meant, and correctly stated in substance, when it found that the successive Governors who had promulgated Good Friday orders had been "acting in accordance with purportedly discretionary power granted to them" (see finding of fact No. 11, quoted in the text *ante*) and concluded that each of them had acted "under the provisions of Government Code Sections 6700 and 18025." (Conclusion of law No. 1, also quoted *ante.*)

his part, religious-oriented or otherwise, that the three-hour period affected by it should be a "holiday." Its patent purpose has been to give practical effect to the Legislature's designation of the period as one of the "holidays in this state" in section 6700, subdivision *(l)*—which is proclamatory but without "operative effect" as it appears there—by making it a "holiday" in fact pursuant to the executive power which the Legislature has granted him to do this as to any day or time. (§ 6700, subd. (n);.§ 18025.)

Appellants contend that we may not thus identify the Governor's *purpose* in making the annual Good Friday order because, they argue, "[t]his is precisely the kind of activity the California Supreme Court has held to be improper" in *County of Los Angeles* v. *Superior Court (Burroughs)* (1975) 13 Cal.3d 721 [119 Cal.Rptr. 631, 532 P.2d 495]. In that case, the court voided a discovery order which would have required local legislators to disclose "portions of discussions in which they participated prior to the enactment of a . . . [local] . . . ordinance." (*Id.,* at p. 723.) It is true, as appellants assert in substance, that the court took this action because the discovery order violated "a longstanding legal principle precluding judicial inquiry into the motivation or mental processes of legislators in enacting legislation" (*ibid.*), which the court discussed at length. (*Id.,* at p. 726 et seq.) It is also true, as appellants imply, that the same "principle" may preclude "judicial inquiry into the motivation or mental processes" underlying *executive* action, because it rests in part upon the constitutional doctrine of separation of powers among the three branches of government. (*Id.,* at p. 727 [fn. 5].)

From the decisions cited by the same court as authority for the "principle," however, it is equally clear that we do not engage in the proscribed "inquiry into the motivation" for executive action when we perceive its purpose to be obvious on the face of the action itself. (See cases cited in *County of Los Angeles* v. *Superior Court, supra,* 13 Cal.3d 721 at pp. 726-727.)[9] The Governor's closure of State offices for the

---

[9]The cited cases include *Hadacheck* v. *Alexander* (1915) 169 Cal. 616, 617 [147 P. 259] ("It is . . . the general, if not the universal, rule that the motive of the legislator may not be inquired into. His conduct is to be judged by the *expression which it takes in the enactment adopted . . .*"); *Soon Hing* v. *Crowley* (1885) 113 U.S. 703, 710 [28 L.Ed. 1145, 1147, 5 S.Ct. 730] ("And the rule is general with reference to the enactments of all legislative bodies that the courts cannot inquire into the motives of the legislators in passing them, *except as they may be disclosed on the face of the acts, or inferrible from their operation . . .*"), and *Wilke & Holzheiser, Inc.* v. *Dept. of Alcoholic Bev. Control* (1966) 65 Cal.2d 349, 364 [55 Cal.Rptr. 23, 420 P.2d 735] (" '[A] *judiciary must judge by results,* not by the varied factors which may have determined legislators' votes . . . ' "). (All italics added.) See also *City and County of San Francisco* v. *Cooper* (1975) 13 Cal.3d 898, 913-914 [120 Cal.Rptr. 707, 534 P.2d 403] and cases there cited.

identical three-hour period designated as a "holiday" in section 6700, subdivision *(l),* cannot be ascribed to coincidence or executive caprice: it unmistakably indicates that his purpose, as we have stated it, was to give practical effect to that statute and as to State employees (who would not otherwise have received a paid "holiday" for the three-hour period because the Legislature has not included it among the "holidays" to which they "shall be entitled" as listed in section 18025).

### IV. *The Federal Constitutional Question*

As stated in its conclusion of law No. 4 (quoted *ante*) and in the judgment (see fn. 1, *ante*), one of the grounds upon which the trial court invalidated the Governor's Good Friday order was that it violated the establishment clause of the First Amendment of the United States Constitution.[10] ■ As the court also indicated in conclusion of law No. 4, the prohibitive effect of the establishment clause is made applicable to the several states by operation of the due process clause of the Fourteenth Amendment. (*Cantwell* v. *Connecticut* (1940) 310 U.S. 296, 303-304 [84 L.Ed. 1213, 1217-1218, 60 S.Ct. 900, 128 A.L.R. 1352]; *Abington School Dist.* v. *Schempp* (1963) 374 U.S. 203, 215-216 [10 L.Ed.2d 844, 854-855, 83 S.Ct. 1560].)

Although the establishment clause states only that no law shall be made "respecting an establishment of religion" (see fn. 10, *ante*), it has "a secular reach far more penetrating in the conduct of Government than merely to forbid an 'established church.' " (*McCollum* v. *Board of Education* (1948) 333 U.S. 203, 213 [92 L.Ed. 649, 659, 68 S.Ct. 461, 2 A.L.R.2d 1338].) It was "intended to erect 'a wall of separation between church and State.' " (*Everson* v. *Board of Education* (1947) 330 U.S. 1, 16 [91 L.Ed. 711, 723, 67 S.Ct. 504, 168 A.L.R. 1392].)

■ Recognizing that "total separation is not possible in an absolute sense," and that "[s]ome relationship between government and religious organizations is inevitable" (*Lemon* v. *Kurtzman* (1971) 403 U.S. 602, 614 [29 L.Ed.2d 745, 756, 91 S.Ct. 2105]), the United States Supreme Court has formulated a tripartite test which a statute must meet before it may be held in conformity with the establishment clause, as follows: ". . . [T]he now well-defined three-part test that has emerged from our decisions is a product of considerations derived from the full sweep of the Establishment Clause cases. Taken together, these decisions dictate

---

[10]"Congress shall make no law *respecting an establishment of religion* . . . ." (Italics added.)

that to pass muster under the Establishment Clause the law in question, first, must reflect a clearly secular legislative purpose, second, must have a primary effect that neither advances nor inhibits religion, and, third, must avoid excessive government entanglement with religion." (*Committee for Public Education* v. *Nyquist* (1973) 413 U.S. 756, 772-773, citations omitted [37 L.Ed.2d 948, 962-963, 93 S.Ct. 2955].)

The high court thus referred to the "three-part test" as one to be applied to a "law," and the decisions applying it deal for the most part—if not exclusively—with the constitutionality of *statutes.* As we have seen, however, the establishment clause itself is binding upon the states through the due process clause of the Fourteenth Amendment. (*Cantwell* v. *Connecticut, supra,* 310 U.S. 296 at pp. 303-304.) ▪ The prohibitive effect of the due process clause reaches, and may preclude, action taken by a state's *executive* as well as by the legislative branch of its government. (See, e.g., the *Civil Rights Cases* (1883) 109 U.S. 3, 11, 17-18 [27 L.Ed. 835, 841-842, 3 S.Ct. 18]; *Shelley* v. *Kraemer* (1948) 334 U.S. 1, 14-15, text at fns. 13 and 14 [92 L.Ed. 1161, 1181-1182, 68 S.Ct. 836, 3 A.L.R.2d 441].) Accordingly, the "three-part test" is the constitutional measure of the Governor's *executive* action, as such, taken in the form of his Good Friday order. Having applied it, we conclude that the order is unconstitutional because it violates the establishment clause and that the judgment is to be affirmed upon this basis.

(1) ▪ *The Good Friday order does not "reflect a clearly secular purpose."*

Addressing the trial court's findings that "Good Friday is a wholly religious day," and that "the hours of 12 noon to 3 P.M. on said day have a special significance which is profoundly rooted in Christian theology" (finding No. 13, quoted *ante*), appellants argue that "although time off on Good Friday might have its origins rooted in Christian history, and although Christian sects may derive some indirect benefit from the fact that state employees have time off on Good Friday, this does not prove that the purpose [of the Governor's order] is not as it clearly appears: to provide a necessary period of relaxation and rest from the ordinary routine of work for all state employees."

This argument is explicitly founded upon the so-called "Sunday Closing Law" cases (*McGowan* v. *Maryland* (1961) 366 U.S. 420 [6 L.Ed.2d 393, 81 S.Ct. 1101]; *Two Guys* v. *McGinley* (1961) 366 U.S. 582 [6

L.Ed.2d 551, 81 S.Ct. 1135]; *Gallagher* v. *Crown Kosher Market* (1961) 366 U.S. 617 [6 L.Ed.2d 536, 81 S.Ct. 1122], in which the United States Supreme Court held as follows: Although early enactments prohibiting various forms of labor on Sundays were motivated by religious principles involving the sanctity of the Sabbath, such legislation no longer retains its Christian character. Its purpose today is not to aid religion but to set aside "a uniform day of rest for all citizens," which is a legitimate *secular* end because it comports with such valid—and entirely secular—state police-power objectives as the "health, safety, recreation and well-being of our citizens." Because Sunday Closing Laws serve this end, they do not violate the proscription of the establishment clause. (*McGowan* v. *Maryland, supra,* at pp. 431-450 [6 L.Ed.2d at pp. 402-413]. Cf. *Two Guys* v. *McGinley, supra,* at pp. 592-598 [6 L.Ed.2d at pp. 558-562]; *Gallagher* v. *Crown Kosher Market, supra,* at pp. 624-630 [6 L.Ed.2d at pp. 540-544].)

The Sunday Closing Law cases are wholly inapposite to the present facts because they hold in effect that a state law prohibiting work on Sunday serves a secular purpose of historical evolution. In contrast, there is no evidence in the present case that the Christian holy day of Good Friday has become secularized in any degree during the course of its longtime observance by Christian sects. The trial court's contrary finding that it *"is* a *wholly religious* day"* (finding No. 13, quoted *ante* [italics added here]), being supported by substantial evidence (see fn. 3, *ante*), is controlling in this respect.

For these reasons, the Governor's order by which the three-hour period of the day is "appointed . . . for a public . . . holiday" (§ 6700, subd. (n)) upon which State employees "shall be entitled" to time off from work with pay (§ 18025) cannot plausibly be characterized as serving any "secular" purpose. Indeed, the trial court received in evidence a State personnel manual which expressly declares that "[i]nasmuch as state offices are closed from 12:00 to 3:00 p.m. on Good Friday, employees are given these hours off *for worship.*"[11] (Italics added.)

Because it wholly lacks any "secular purpose," the Governor's order fails the first aspect of the tripartite test which it must meet in order to

---

[11]Appellants have challenged both the accuracy of the here-quoted statement and the evidentiary authenticity of its source. Their complaints in these respects are to be ignored: it was they who introduced the personnel manual in evidence. (See Witkin, Cal. Evidence (2d ed. 1966) § 1286, par. (a), p. 1189.)

"pass muster under the Establishment Clause." (*Committee for Public Education* v. *Nyquist, supra,* 413 U.S. 756 at pp. 772-773 [37 L.Ed.2d 948 at pp. 962-963].) This failure alone is conclusive of its unconstitutionality: the three aspects of the test are conjunctive, and government action to which it is applied must satisfy each of them in order to withstand constitutional scrutiny. (*Wolman* v. *Essex* (S.D. Ohio 1972) 342 F.Supp. 399, 411 [affd. 409 U.S. 808 (34 L.Ed.2d 69, 93 S.Ct. 61)].) For the reasons next stated in sequence, however, we have concluded that the Governor's order fails the other two aspects of the test as well.

(2) ■ *The "primary effect" of the order "advances religion."*

Appellants contend that the "primary effect" of the order is not one which "advances religion" (*Committee for Public Education* v. *Nyquist, supra,* 413 U.S. 756 at p. 773 [37 L.Ed.2d 948 at pp. 962-963]) because any "effect" it has in this direction is remote at worst. In support of the remoteness argument, appellants quote the language of the *Nyquist* decision in which the court stated that "*an indirect* and *incidental* effect beneficial to religious institutions has never been thought a sufficient defect to warrant the invalidation of a state law." (*Id.,* at p. 775 [37 L.Ed.2d at p. 964] [italics added].)

Although the quoted principle is well settled (see the discussion and cases cited in *Committee for Public Education* v. *Nyquist, supra,* 413 U.S. 756 at pp. 776-777 [37 L.Ed.2d 948 at pp. 964-965]), the decisions in which it has been recognized arose from factual contexts in which the "primary effect" of the governmental action involved, and whether it was one which "advances religion," required searching analysis because the activities reached by it included the performance of secular and religious functions alike and demarcation of the line between them, for purposes of determining whether and where establishment clause proscriptions attached, was a difficult and delicate task. (See, e.g., *Committee for Public Education* v. *Nyquist, supra,* at pp. 759, 774-777 [37 L.Ed.2d at pp. 955, 963-965]; cases cited, *id.,* at pp. 772, fns. 29 and 30, 783, fn. 39 [37 L.Ed.2d at pp. 962, 968-969]; *Hunt* v. *McNair* (1973) 413 U.S. 734, 742-743 [37 L.Ed.2d 923, 930-931, 93 S.Ct. 2868].)

In the present case, the state action exemplified by the Governor's Good Friday order requires no such demarcation: as we have seen, it has *no* "secular purpose" beyond which it may be deemed to have only an "*indirect* and *incidental* effect beneficial to religious institutions." (*Committee for Public Education* v. *Nyquist, supra,* 413 U.S. 756 at p. 775 [37 L.Ed.2d 948 at p. 964] [italics added].) To the contrary, the order is

*directly* "beneficial to religious institutions." Its promulgation by the Governor, and its execution throughout the State office complex, amount to an observance by the State itself (in the sense of its recognition, if not its active ceremonial participation), of the "wholly religious day" which the trial court found Good Friday to be. In the implementation of the order, State employees are given paid time off "for worship." (See text at fn. 11, *ante.*)

The fact—stressed by appellants—that the order does not *require* the employees to "worship" during the three-hour "holiday" is not material. The decisive consideration is that it affords them the opportunity, and actually encourages them, to "worship" if they are so inclined. Under the circumstances, the order is unconstitutional because its "primary effect" is one which "advances religion" within the meaning of the critical test. (*Committee for Public Education* v. *Nyquist, supra,* 413 U.S. 756 at p. 773 [37 L.Ed.2d 948 at pp. 962-963].)

(3) ■ *The order constitutes an "excessive entanglement with religion."*

Appellants argue that the Governor's order does not reflect an "excessive entanglement with religion," within the meaning of the *Nyquist* test, because it does not require the State to engage in such activities of inspection, evaluation, and "surveillance" as. the United States Supreme Court has determined to constitute "excessive entanglement" which is impermissible under the establishment clause. (E.g., *Lemon* v. *Kurtzman, supra,* 403 U.S. 602 at pp. 616, 619-621 [29 L.Ed.2d 745 at pp. 759-761]. See, and compare, *Tilton* v. *Richardson* (1971) 403 U.S. 672, 687 [29 L.Ed.2d 790, 804, 91 S.Ct. 2091]; *Hunt* v. *McNair, supra,* 413 U.S. 734 at pp. 745-749 [37 L.Ed.2d 923 at pp. 932-935].) The decisions in which the court has found this situation—which it has broadly described as "administrative entanglement" (*Committee for Public Education* v. *Nyquist, supra,* 413 U.S. 756 at p. 780 [37 L.Ed.2d 948 at p. 967])—have involved state programs for publicly funded financial assistance to educational institutions which performed both secular and religious functions, and where ongoing state "surveillance" of the programs' administration was accordingly required "in order to ensure that state aid supports only secular education." (*Lemon* v. *Kurtzman, supra,* at p. 616 [29 L.Ed.2d at pp. 757-758].)

A comparable situation is not presented here; it may be acknowledged that the Governor's Good Friday order exacts no such monitoring activities by the State as would amount to the "administrative entangle-

ment" just described. But the prospect of *excessive* entanglement, for constitutional purposes, is not limited to situations where such activities may be required. The high court has expressly stated that judicial scrutiny for the prospect must comprehend "all the circumstances of a particular relationship" and is not to be governed by "precise rules and forms." (*Lemon* v. *Kurtzman, supra,* 403 U.S. 602 at p. 614 [29 L.Ed.2d 745 at pp. 756-757].) "Excessive entanglement" may thus occur where so-called "administrative entanglement" does not.

The Governor's order obviously reaches the thousands of State employees who are directly involved by reason of their being given time off from work during the designated three-hour period of Good Friday. It reasonably may—and realistically must—be presumed to reach the countless members of the public who are denied access to State offices by the closure it causes, and by the people of California whose public business is perceptibly interrupted, during the period. There is no reason for these results other than the State's observance of a "wholly religious day" as a holiday, which is the unmistakable effect of the Governor's order as discussed *ante.* Because the "wholly religious" character of the day is exclusively Christian in origin and practice, its observance by the State in our religiously pluralistic society offers a "divisive political potential" which may in itself constitute an even "broader base of entanglement" for constitutional purposes.[12] (*Lemon* v. *Kurtzman, supra,* 403 U.S. 602 at pp. 622-623 [29 L.Ed.2d 745 at pp. 761-762].) Under all the circumstances, we perceive in the Governor's order an "excessive government entanglement with religion" whereby it fails the third aspect of the test to which the establishment clause subjects it. (*Committee for Public Education* v. *Nyquist, supra,* 413 U.S. 756 at p. 773 [37 L.Ed.2d 948 at pp. 962-963].)

## V. *The State Constitutional Question*

■ Although appellants have made no point of it, we cannot ignore the trial court's separately stated conclusion that the annual Good Friday order was invalid upon the distinct ground that it violated article I, section 4, of the California Constitution. (See its conclusion of law No. 4, quoted *ante.*) The history and structure of our national federalist

---

[12]It may be acknowledged that the present record discloses no direct evidence that the Governor's annual Good Friday order has actually engendered political controversy in California. Our statement nevertheless stands because the "potential" is obvious: "[I]n the words of Madison, 'it is proper to take alarm at the first experiment on our liberties.' " (*Abington School Dist.* v. *Schempp, supra,* 374 U.S. 203 at p. 225, citations omitted [10 L.Ed.2d 844 at p. 860].)

system has both permitted and required the long-standing judicial construction of the California Constitution as a document whose "vitality" and "force" are independent of its federal counterpart. (*People v. Brisendine* (1975) 13 Cal.3d 528, 548-550 [119 Cal.Rptr. 315, 531 P.2d 1099]. See also Falk, *The State Constitution: A More Than "Adequate" Nonfederal Ground* (1973) 61 Cal.L.Rev. 273, particularly at p. 277 ["The California Supreme Court has long regarded the Declaration of Rights of the California Constitution as a charter of independent significance" (fn. omitted)].) It has recently been amended to say this in express terms: section 24 of article I, declaring that "Rights guaranteed by this Constitution are not dependent upon those guaranteed by the United States Constitution," was adopted by the people in 1974 as a "reaffirmation of existing law." (*People v. Brisendine, supra,* at p. 551.)

■ The courts of California are the exclusive and final arbiters of the "rights" guaranteed by its Constitution, so long as the interpretive results they reach extend, to the citizens within their jurisdiction, equal or greater protection to those extended by the United States Supreme Court under textually parallel provisions of the federal Bill of Rights. (*People v. Brisendine, supra,* 13 Cal.3d 528 at pp. 551-552 [discussing and quoting *State v. Kaluna* (1974) 55 Hawaii 361 [520 P.2d 51].) ■ For these reasons, it is apparent that the trial court's invalidation of the Good Friday order under article I, section 4, of the California Constitution warrants examination independently of that to which we have subjected the order under the establishment clause of the First Amendment.

When the present judgment was entered, section 4 of article I provided in pertinent part: "The free exercise and enjoyment of religious profession and worship, without discrimination or preference, shall forever be guaranteed in this State . . . ." As re-adopted by vote of the people on November 5, 1974 (in conjunction with its repeal as formerly worded), and as now pertinent, it provides: "Free exercise and enjoyment of religion without discrimination or preference are guaranteed. . . . The Legislature shall make no law respecting an establishment of religion. . . ." The identity of the language of its newly adopted "establishment clause" with that of the federal establishment clause (see fn. 10, *ante*) suggests that state action reached by both should be tested by the courts of California according to the same standards which the United States Supreme Court employs in applying the federal language. (See *Gabrielli v. Knickerbocker* (1938) 12 Cal.2d 85, 89 [82 P.2d 391]; *Cohen v. Superior Court* (1959) 173 Cal.App.2d 61, 67 [343 P.2d 286].)

However, the "[f]ree exercise and enjoyment" clause of section 4 is not new: except for the editorial—and nonsubstantive—changes made when it was re-adopted by the people in 1974, it has appeared in our Constitution since 1849. (Const. of 1849, art. I, § 4; Const. of 1879, art. I, § 4 [as adopted May 7, 1879, and as re-adopted Nov. 5, 1974].) Section 28 (formerly § 22) of article I requires that the clause be read as both "mandatory and prohibitory."[13] By its express terms, what it mandates is the perpetual guaranty of the "[f]ree exercise and enjoyment" of religion; what it prohibits is "discrimination" against, "or preference" in favor of, one religion as opposed to another.

The Governor's Good Friday order has produced both of the results which the clause prohibits. Because it has appointed an exclusively Christian holy day as a paid "holiday" for all pertinent purposes affecting state offices and employees, it amounts to "discrimination" against all non-Christian religions and "preference" of those which are Christian. The trial court made these effects abundantly clear, in its findings and conclusions, by citing the discriminatory and preferential character of the order with reference to the Jewish religion. (See findings 13, 14 and 15, and conclusion of law no. 2, all as quoted *ante*.)

The court was therefore correct in concluding that the executive action in question "further violates Article I, Section 4 of the California Constitution in that it constitutes discrimination and preference of one religion over others." (Conclusion of law No. 4.) The judgment is to be affirmed on this distinct basis.

## VI. *The Constitutionality Of The Statutes Involved*

■ Having held that the Governor's *executive* action relative to the three-hour period of Good Friday is invalid under the federal and state Constitutions alike (but on separate grounds as to each), with the consequence that the Controller's practice of paying State employees for time taken from work during the period is invalid as well, we turn to the *legislative* action involved. We have seen that the Governor issued his Good Friday order in an exercise of power to declare a given day or time "appointed . . . for a public . . . holiday" which the Legislature has granted him in two separate statutes (§ 6700, subd. (n); § 18025), and his

[13]Present section 28 of article I appeared as section 22 thereof in the Constitution of 1879. It was also repealed and re-adopted, as section 28 but otherwise unchanged, by vote of the people on November 5, 1974. It reads, as its predecessor read: "The provisions of this Constitution are mandatory and prohibitory, unless by express words they are declared to be otherwise." .

exercise of which produced the now-enjoined result of a paid three-hour "holiday" for State employees on Good Friday by operation of section 18025.

We have also noted the trial court's conclusion of law that "[t]he holiday effect of the days specified in Government Code Section 6700 is not reached . . ." (See conclusion of law No. 11, quoted *ante.*) This statement imports that the court withheld judgment on the constitutionality of the pertinent provisions of section 6700. This view, stated in a conclusion of law, is not binding upon us: if the decision of the trial court is correct, we are to examine it even if we disagree with the conclusions reached by the court in arriving at it.[14] (*Niles Sand & Gravel Co.* v. *Alameda County Water Dist.* (1974) 37 Cal.App.3d 924, 936, fn. 12 [112 Cal.Rptr. 846].)

Having accordingly—and independently—examined subdivision (n) of section 6700 and section 18025, we find them patently constitutional insofar as they are broad legislative grants of executive power to declare a day "appointed . . . for a public . . . holiday." ■ However, a statute valid on its face will be declared unconstitutional if it is unconstitutionally applied by a public officer or agency empowered to effectuate it. (*Yick Wo* v. *Hopkins* (1886) 118 U.S. 356, 373-374 [30 L.Ed. 220, 227-228, 6 S.Ct. 1064]; *People* v. *Wingo* (1975) 14 Cal.3d 169, 180-181 [121 Cal.Rptr. 97, 534 P.2d 1001].) ■ This has occurred here: although subdivision (n) of section 6700 and section 18025 are constitutionally innocuous in their express terms, they have been unconstitutionally *applied* by the Governor, with respect to Good Friday, because of the constitutional proscriptions applicable to that day as a "wholly religious day."

Subdivision *(l)* of section 6700 is *not* constitutionally innocuous on its face, because it expressly violates the same constitutional proscriptions by designating the "wholly religious" three-hour Good Friday holiday as one of the "holidays in this state." We recognize that it has no "operative effect" in itself (33 Ops.Cal.Atty.Gen. 37, *supra,* at p. 38; 57 Ops.Cal. Atty.Gen. 641, *supra,* at p. 642), and that it is not in itself a legislative grant of the executive power which the Governor unconstitutionally exercised in his Good Friday order. These facts, and the collateral role of

---

[14]This reasoning does not permit us to examine matters which have been expressly excluded from the *judgment.* Accordingly, and contrary to appellants' argument, the exclusionary provisions of paragraph 5 of the judgment (relative to its effect upon the "suspension of judicial business on State holidays . . .": see fn. 1, *ante*) are not subject to review upon the appeal from it.

the statute in the Governor's action, remind us of the established principle that we should not pronounce a statute unconstitutional unless such result is *necessary* to the proper disposition of a cause. (*Palermo* v. *Stockton Theatres, Inc.* (1948) 32 Cal.2d 53, 65 [195 P.2d 1]; *Stafford* v. *People* (1956) 144 Cal.App.2d 79, 82-83 [300 P.2d 231]; *Whitson* v. *City of Long Beach* (1962) 200 Cal.App.2d 486, 507-508 [19 Cal.Rptr. 668]; *Bayside Timber Co.* v. *Board of Supervisors* (1971) 20 Cal.App.3d 1, 5-6 [97 Cal.Rptr. 431].)

Although the role of the statute in the Governor's action was collateral, it was significant as a factor of his purpose in acting. (See the text following fn. 9, *ante.*) In the full context of this case, we may not reasonably ignore the patent invalidity of legislation which is unconstitutional, under the establishment clause of the United States Constitution, because it is "wholly religious" in its terms; which violates the California Constitution because it is discriminatory and preferential by reason of its exclusive Christian character and effect; and which will persist, as a continuing affront to the rights of our people who practice non-Christian religions or none at all, unless we hold it unconstitutional. Because we accordingly deem the conclusion "absolutely necessary to a disposition of the appeal" (*Bayside Timber Co.* v. *Board of Supervisors, supra,* 20 Cal.App.3d 1 at pp. 5-6), we hold that section 6700, subdivision *(l)* is unconstitutional.

## VII. *The Award Of Attorneys' Fees*

Appellants further contend that the trial court erred in awarding attorneys' fees to respondent's counsel, payable by the State. Absent a controlling statute or an agreement between the parties, attorneys' fees are generally not awarded to successful litigants in American courts. (See *Fleischmann Corp.* v. *Maier Brewing* (1967) 386 U.S. 714, 717-718 [18 L.Ed.2d 475, 478-479, 87 S.Ct. 1404].) Section 1021 of the Code of Civil Procedure provides in pertinent part: "Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties . . . ." In the present case, there was no express or implied agreement relative to attorneys' fees.

One theory under which attorneys' fees have been awarded to successful litigants in some jurisdictions, in the absence of statutory authority or agreement by the parties, is the so-called "private attorney general concept." As defined by the California Supreme Court from its

evolution in federal decisions, "[t]his concept . . . seeks to encourage suits effectuating a strong congressional or national policy by awarding substantial attorney's fees, regardless of defendants' conduct, to those who successfully bring such suits and thereby bring about benefits to a broad class of citizens." (*D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 27 [112 Cal.Rptr. 786, 520 P.2d 10].)

The United States Supreme Court has recently repudiated the "private attorney general concept" in the federal judicial system. (*Alyeska Pipeline Co.* v. *Wilderness Society* (1975) 421 U.S. 240, 246, 265-271 [44 L.Ed.2d 141, 147, 158-161, 95 S.Ct. 1612].) More important for our purposes, the California Supreme Court has to date expressly declined to pass upon the question whether the concept may be applied in this state. (*D'Amico* v. *Board of Medical Examiners, supra,* 11 Cal.3d 1 at p. 27; *Bozung* v. *Local Agency Formation Com.* (1975) 13 Cal.3d 483, 485 [119 Cal.Rptr. 215, 531 P.2d 783]; *Menge* v. *Farmers Ins. Group* (1975) 50 Cal.App.3d 143, 147 [123 Cal.Rptr. 265].) We are accordingly not at liberty to employ it in support of the award of attorneys' fees made in the present case.

However, the California courts have recognized two other exceptions to the general rule pronounced in Code of Civil Procedure section 1021, both of which are based upon exercise of the broad equitable powers of the courts in appropriate cases. The first, the "common fund doctrine," may be invoked when a number of persons are entitled in common to a specific fund of money and an action brought by a plaintiff results in its recovery or preservation for the benefit of all. According to the "common fund doctrine," as applied in these circumstances, the successful plaintiff may be awarded attorneys' fees from the fund involved. (*Winslow* v. *Harold G. Ferguson Corp.* (1944) 25 Cal.2d 274, 277 [153 P.2d 714]; *Fletcher* v. *A. J. Industries, Inc.* (1968) 266 Cal.App.2d 313, 320 [72 Cal.Rptr. 146] and authorities there cited. See *D'Amico* v. *Board of Medical Examiners, supra,* 11 Cal.3d 1 at p. 25.)

The second exception recognized in California is the so-called "substantial benefit rule" under which, when a corporate derivative action or a class action results in the conferral of substantial benefits upon the defendant (either pecuniary or nonpecuniary in nature), the defendant may be required to yield some of those benefits in the form of an award of attorneys' fees to the successful plaintiff. (*Fletcher* v. *A. J. Industries, Inc., supra,* 266 Cal.App.2d 313 at pp. 318-325; *Knoff* v. *City*

*etc. of San Francisco* (1969) 1 Cal.App.3d 184, 203-204 [81 Cal.Rptr. 683]. See *D'Amico* v. *Board of Medical Examiners, supra,* 11 Cal.3d 1 at p. 25.)

The "common fund doctrine" originated with the United States Supreme Court in *Trustees of International Improv. Fund* v. *Greenough* (1882) 105 U.S. 527 [26 L.Ed. 1157]. (See *Fletcher* v. *A. J. Industries, Inc., supra,* 266 Cal.App.2d 313 at pp. 322-323.) The "substantial benefit rule" is a derivative of it, as formulated by the same court in an extension of *Greenough* declared in *Sprague* v. *Ticonic Bank* (1939) 307 U.S. 161 [83 L.Ed. 1184, 59 S.Ct. 777]. (*Fletcher* v. *A. J. Industries, Inc., supra.*)

The rule of *Greenough,* as extended in *Sprague,* was expressly recognized by the *Alyeska Pipeline* court but declared to be inapplicable in that case. (*Alyeska Pipeline Co.* v. *Wilderness Society, supra,* 421 U.S. 240 at pp. 257-259 [text at fn. 30] [44 L.Ed.2d 141 at pp. 153-154].) The court thereby distinguished both from the "private attorney general concept" as a basis for awarding attorneys' fees to a prevailing litigant. The same distinction has been recognized in several of the federal decisions which the *Alyeska Pipeline* court declared to have "erroneously . . . employed the private attorney general approach to award attorneys' fees." (*Id.,* at p. 270, fn. 46 [44 L.Ed.2d at p. 160].)[15]

From the distinction mentioned, it is apparent that a California court may validly award attorneys' fees under the "common fund doctrine" or its "substantial benefit" derivative, or both (*Fletcher* v. *A. J. Industries, Inc., supra,* 266 Cal.App.2d 313 at pp. 322-323; *Knoff* v. *City etc. of San Francisco, supra,* 1 Cal.App.3d 184 at pp. 203-204), without invoking the "private attorney general concept" as the basis therefor. We conclude that the present trial court has done this, and that its action is to be sustained.

In *Fletcher* v. *A. J. Industries, Inc., supra,* 266 Cal.App.2d 313, no common fund was created (*id.,* at p. 321), and no statute or agreement specifically authorized an award of attorneys' fees to the prevailing litigant. We nevertheless held that the trial court's equitable powers enabled it to award fees under the "substantial benefit rule" (*id.,* at p. 323) according to which, by our description as pertinent to that case, "the successful plaintiff in a stockholder's derivative action may be awarded attorneys' fees against the corporation if the latter received 'substantial

---

[15]See, e.g. (cited *ibid.*), *Fairley* v. *Patterson* (5th Cir. 1974) 493 F.2d 598, 605 [text at fn. 10]; *Taylor* v. *Perini* (6th Cir. 1974) 503 F.2d 899, 904; *Fowler* v. *Schwarzwalder* (8th Cir. 1974) 498 F.2d 143, 144; *La Raza Unida* v. *Volpe* (N.D.Cal. 1972) 57 F.R.D. 94, 96-97.)

benefits' from the litigation, although the benefits were not 'pecuniary' and the action had not produced a fund from which they might be paid." (*Id.*, at p. 320.)

*Knoff* v. *City etc. of San Francisco, supra*, 1 Cal.App.3d 184, involved a taxpayer's suit for a writ of mandate to compel agencies and officers of the City and County of San Francisco to perform their "public duty" to bring about the correction of deficiencies in tax assessments with the consequence of substantially increased tax revenues. (*Id.*, at pp. 195-197.) We upheld the trial court's order that attorneys' fees incurred by the successful petitioner be paid by the city and county, stating that "the award of attorneys' fees and the details thereof were proper exercises of the trial court's broad equitable powers . . . [citing *Fletcher* v. *A. J. Industries, Inc., supra*, 266 Cal.App.2d 313 at pp. 319-324] . . . of which the existence of an actual fund of money is not a condition precedent." (*Id.*, at p. 203.)

The present action is also in mandamus, and it is one in which respondent also seeks to compel the performance of public duties. The result is of benefit to State employees and to the public. In this regard, the trial court found from substantial evidence that tax-generated funds were used to pay State employees for the three-hour period of Good Friday during which, pursuant to the Governor's order, they did not work;[16] that respondent was a member of an ascertainable class of State employees; and that her attorneys acted "not only on her behalf, but *in the general public interest* and on behalf of members of . . . [her] . . . class. . . ." (Italics added.) (See fn. 16, *ante.*)

Both *Knoff* and *Fletcher* established that the "substantial benefit" rule permits an award of attorneys' fees, as an exception to the contrary principle expressed in section 1021 of the Code of Civil Procedure, where (1) the suit is one in which the court's equitable powers come into play; (2) it is commenced and maintained as a representative action; and (3) it results in a disposition that confers substantial benefits, pecuniary or otherwise, upon the persons represented.

---

[16]The court specifically found as follows: "Tax funds from the General Fund of the State of California are used for payment of State employees during the . . . three hours on Good Friday; Respondent State of California estimates that the cost of salaries and related staff benefits, payable to its employees from said tax-generated funds in 1972 is the sum of $818,167.00 per hour. . . . The efforts of Petitioner's attorneys have resulted in a substantial benefit derived by Petitioner's class and the public at large and the saving to the State of approximately $2,000,000 in 1973 alone, and further saving which can reasonably be anticipated in years to come. . . ."

These criteria are all met in the present case. Respondent has rendered a "substantial benefit" to the citizens and taxpayers of this State (saving them the public funds expended for work not performed by State employees during the three-hour "holiday" period of Good Friday: see fn. 16, *ante*) which is not materially distinguishable from the benefits received by the corporation in *Fletcher* v. *A. J. Industries, Inc., supra,* 266 Cal.App.2d 313, and by the taxpayers in *Knoff* v. *City etc. of San Francisco, supra,* 1 Cal.App.3d 184. It follows that the trial court did not err in making the award challenged here.

Appellants also contend that the amount awarded is excessive. ■ When such award is made in an appropriate case, its amount rests within the sound discretion of the trial court. (See *Glass* v. *Gulf Oil Corp.* (1970) 12 Cal.App.3d 412, 438-439 [96 Cal.Rptr. 902]; *Smith* v. *Smith* (1970) 4 Cal.App.3d 446, 452 [84 Cal.Rptr. 241]; *Spencer* v. *Harmon Enterprises, Inc.* (1965) 234 Cal.App.2d 614, 621 [44 Cal.Rptr. 683].) The decisions frequently evaluate reasonableness of fees in light of such factors as "[t]he nature of the litigation, its difficulty, the amount involved, the skill required in its handling, the skill employed, the attention given, the success or failure of the attorney's efforts, the attorney's skill and learning, including his age and experience in the particular type of work demanded." (*Los Angeles* v. *Los Angeles-Inyo Farms Co.* (1933) 134 Cal.App. 268, 276 [25 P.2d 224].)

"The value of attorney's services is a matter with which a judge is necessarily familiar. [Citation.] The nature of the obligation, the difficulty in enforcing it, the amount involved, the skill required, the attention given, the success of the attorney's efforts, are factors to be considered. [Citation.] . . . The value of the legal services was a question of fact for the judge." (*Still* v. *Plaza Marina Commercial Corp.* (1971) 21 Cal.App.3d 378, 387 [98 Cal.Rptr. 414].)

■ In the present case, the trial judge made the following comments regarding the value of services rendered: "In fixing fees, I do take into account the scheduled fees awarded in prior cases, which is the subject matter of Mr. Kaplan's declaration. I further take into account the magnitude of the issues before me. And I think these are all proper criteria that I should consider. I'm quite willing to say that absent other considerations, I would make, fix a fee based upon percentage and the fee would be much larger than the fee that . . . I'm now going to grant. . . ."

The record reflects that respondent's attorneys expended "some 300 hours" of time. ■ The hourly value of an attorney's services

performed before a trial court is for the trial judge to evaluate. (*Still* v. *Plaza Marina Commercial Corp., supra,* 21 Cal.App.3d 378 at, p. 387.) The "experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject.to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong." (*Harrison* v. *Bloomfield Building Industries, Inc.* (6th Cir. 1970) 435 F.2d 1192, 1196.) The present record does not indicate that the trial court abused its discretion in awarding attorneys' fees, or that the amount is excessive.

Respondent has applied to this court for a further award of fees to compensate her attorneys for their efforts in resisting this appeal. That matter may appropriately be left to the discretion of the trial court, which we hereinafter vest with jurisdiction for the purpose. (See *American City Bank* v. *Zetlen* (1969) 272 Cal.App.2d 65, 67-70 [76 Cal.Rptr. 898]; *Bozung* v. *Local Agency Formation Com., supra,* 13 Cal.3d 483 at p. 485.)

\* \* \* \*

Additional points advanced by appellants need not be considered because they are insignificant; others, because they relate to matters (e.g., administrative problems to be encountered if the decision stands) which are not within the scope of the appeal or the province of this court. However, one point in the latter category prompts us to state a limitation of this decision. It is addressed exclusively to the State's "holiday" involvement with the "wholly religious" day of Good Friday as described. It does not reach the "holiday" observance of any other day which has religious connotations, past or present. (As to Christmas, for example, see *Allen* v. *Morton* (1973) 495 F.2d 65, 72-74 [161 App.D.C. 239].)

The judgment is affirmed. The trial court is authorized to act upon an application by respondent, for an award of attorneys' fees on appeal, when the remittitur has been filed herein. The writ of supersedeas heretofore issued by Division Two of this court under the designation 1 Civil 33042, and which stayed "enforcement" of the judgment hereby affirmed, is recalled forthwith.

Caldecott, P. J., and Christian, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied March 18, 1976.