[Civ. No. 39366. First Dist., Div. Four. Feb. 15, 1977.]

CALIFORNIA SCHOOL EMPLOYEES ASSOCIATION et al., Plaintiffs and Respondents, v.
SEQUOIA UNION HIGH SCHOOL DISTRICT et al., Defendants and Appellants.

**COUNSEL**

Keith C. Sorenson, District Attorney, and George F. Camerlengo, Deputy District Attorney, for Defendants and Appellants.

Robert L. Blake, William D. Dobson, Madalyn J. Frazzini, Patrick S. McGovern and Charles L. Morrone for Plaintiffs and Respondents.

## Opinion

**CALDECOTT, P. J.**—This is an appeal from a judgment in favor of plaintiffs-respondents California School Employees Association (CSEA), directing the appellant Sequoia Union High School District (the District) "to treat March 28, 1975, as a paid holiday and adjust the compensation paid to the District's classified employees accordingly." March 28, 1975, was Good Friday.

The trial court's findings of fact provided "that Petitioner CSEA, in its negotiations with Respondent District under the provisions of the Winton Act, which negotiations took place prior to January 16, 1975, negotiated March 28, 1975, as a holiday as a part of a wage and fringe benefit agreement."[1]

On January 16, 1975, the time of the adoption of the school calendar, the District, pursuant to its powers under sections 5202 and 5201.1 of the Education Code, declared March 28, 1975—Good Friday—a school holiday for all classified employees. On March 12, 1975, this court rendered its initial decision in *Mandel* v. *Hodges.* On March 25, 1975, the District informed its classified employees that they could not give the anticipated Good Friday holiday because of the *Mandel* decision. CSEA then filed its petition for a writ of mandate.

After rehearing, the Court of Appeal held in *Mandel* v. *Hodges,* 54 Cal.App.3d 596 [127 Cal.Rptr. 244], that the Governor's order proclaiming Good Friday a state holiday between the hours of noon and 3 p.m., violated the establishment clause of the First Amendment to the United States Constitution and article I, section 4 of the California Constitution.

■■ ■■■ Relying on the *Mandel* decision, the District contends that it properly rescinded the Good Friday holiday agreed upon in negotiations with CSEA as it violates the Constitutions of the

---

[1]Prior to the 1974-1975 school year, spring vacation was held in the week before Easter, thus Good Friday fell within spring vacation. In the 1974-1975 year, however, spring vacation was held the week following Easter.

United States and California.[2] We reject this contention as we find the *Mandel* decision distinguishable from the facts presented in the case at hand.

The three-hour paid holiday to state employees on Good Friday in *Mandel* resulted from governmental action by the Governor pursuant to discretionary power vested in him by the Legislature in section 18025 of the Government Code. (*Mandel, supra,* at p. 608.) Here, the holiday arose out of negotiations between CSEA and the District as part of a wage and fringe benefit agreement for the 1974-1975 school year. The union representatives were empowered to engage in such negotiations by the meet and confer process under the Winton Act (see Ed. Code, § 13080 et seq.); the board of trustees was vested with authority to approve the holidays chosen by CSEA under Education Code sections 5202, 5201.1 and 13656. Such statutes do not in any way encourage a choice of Good Friday over any other holiday. Thus, while the Legislature vested the board with the power to declare certain school holidays, the *discretionary* authority in requesting said days rested primarily with a nongovernmental entity, CSEA. The constitutional infirmity in *Mandel,* of granting the chief executive of the state with a discretionary power that was exercised in favor of a Christian, rather than a non-Christian holiday, is absent in the case at hand. (*Supra,* at p. 617.) The state, through its highest elected official, is not in the position of advancing or inhibiting a particular religion. Under the facts of this case the effect, if any, on religious institutions is indirect and incidental and such an effect has never been held sufficient to warrant invalidation of state law. (*Committee for Public Education* v. *Nyquist, supra,* 413 U.S. 756.)

Secondly, in distinguishing *Mandel* from the so-called "Sunday Closing Law" cases (*McGowan* v. *Maryland,* 366 U.S. 420 [6 L.Ed.2d 393, 81 S.Ct. 1101], *Two Guys* v. *McGinley,* 366 U.S. 582 [6 L.Ed.2d 551, 81 S.Ct. 1135]), the court noted that " 'Good Friday is a wholly religious day,' " and that *it was* " '12 noon to 3 P.M. on said day . . . [that had] . . . a special significance . . . profoundly rooted in Christian theology.' " (*Supra,* at p. 611.) Indeed, the trial court received in evidence a state personnel

---

[2] " 'To pass muster under the Establishment Clause the law in question, first, must reflect a clearly secular legislative purpose, second, must have a primary effect that neither advances nor inhibits religion, and, third, must avoid excessive government entanglement with religion.' (*Committee for Public Education* v. *Nyquist* (1973) 413 U.S. 756, 772-773 . . . ." (*Mandel* v. *Hodges, supra,* at p. 611.)

manual which expressly declared that the time was given off "for worship." (*Supra,* at p. 612.) The fact in the present case, that the entire day was a holiday, not just between 12 to 3, is by no means insignificant. Several secular considerations may have entered into the union representatives' choice of March 28 as a holiday rather than a non-Christian holiday. As noted above, in prior school years Good Friday fell within spring vacation as it was held the week before Easter. In the 1974-1975 year, spring vacation was held the week following Easter. Thus, the choice of March 28—the Friday before spring vacation—as a holiday, could have been for as mundane and secular a purpose as affording classified employees a longer spring vacation.

Lastly, the Supreme Court has recognized that total separation is not possible in an absolute sense, and that some relationship between government and religious organizations is inevitable (*Lemon* v. *Kurtzman,* 403 U.S. 602 [29 L.Ed.2d 745, 91 S.Ct. 2105]). It is therefore only *excessive* government entanglement that will invoke a constitutional attack. The District itself concedes that the amount of entanglement in this case is "not as great as in *Mandel*," as the amount of money expended and number of employees affected is less. These factors, however, are not determinative; it is the degree of governmental involvement in the affairs of religion that is crucial. As the March 28 holiday in the instant case arose out of employee-employer negotiations, not a governor's order, we fail to find the connection so excessive as to warrant invalidating the contractual bargain struck between the District and CSEA.[3] Accordingly, we find that the trial court did not err in granting CSEA the relief requested.[4]

The judgment is affirmed.

Rattigan, J., and Christian, J., concurred.

A petition for a rehearing was denied March 11, 1977, and appellants' petition for a hearing by the Supreme Court was denied April 14, 1977. Sullivan, J.,* was of the opinion that the petition should be granted.

---

[3]In reaching this result we have also made an independent examination of article I, section 4 of the California Constitution and have found no constitutional violation.

[4]The prayer requesting attorneys' fees has been abandoned on the theory that the school district did at all times act in good faith.

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.