TOWNSHIP OF WEST WINDSOR, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, APPELLANT, v. PUBLIC EMPLOYMENT RELATIONS COMMISSION AND P. B. A. LOCAL 130, RESPONDENTS.

Argued May 8, 1978—Decided August 3, 1978.

101

Mr. *Frederic J. Schragger* argued the cause for appellant (*Messrs. Schragger, Schragger and Lavine,* attorneys).

Mr. *Don Horowitz,* Deputy General Counsel, argued the cause for respondent Public Employment Relations Commission (*Mr. Sidney H. Lehmann,* General Counsel, attorney; *Mr. Lehmann* and *Mr. James F. Schwerin,* Deputy General Counsel, on the brief).

Mr. *James R. Zazzali* argued the cause for respondent P. B. A. Local 130 (*Mr. William L. Bunting, Jr.,* attorney).

Ms. *Erminie L. Conley,* Deputy Attorney General, argued the cause for *amicus curiae* The Office of Employee Relations (*Mr. John J. Degnan,* Attorney General of New Jersey, attorney; *Mr. Stephen Skillman,* Assistant Attorney General, of counsel).

Mr. *James R. Zazzali* submitted a brief on behalf of *amicus curiae* New Jersey State Policemen's Benevolent Association (*Messrs. Zazzali, Zazzali* and *Whipple,* attorneys).

Mr. *David A. Wallace* submitted a brief on behalf of *amicus curiae* New Jersey State League of Municipalities (*Mr. Gerald L. Dorf,* attorney).

The opinion of the court was delivered by

PASHMAN, J. During negotiations between the Township of West Windsor and the majority representative of its police department employees, Patrolmen's Benevolent Association Local 130, concerning the adoption of a collective agreement, a dispute arose over the negotiability of a proposal made by the Local. This proposal concerned the contractual definition of a "grievance" which would be presentable under the negotiated grievance procedure contained in the agreement ultimately reached.

The Local contended that a grievance cognizable under the collective agreement had to be defined in terms as broad as those used in the applicable provision of New Jersey Employer-Employee Relations Act, *L.* 1968, *c.* 303, as amended by *L.* 1974, *c.* 123, *N. J. S. A.* 34:13A–1 *et seq.* (the Act): an appeal from the "interpretation, application or violation of policies, agreements and administrative decisions affecting [the employees]." *N. J. S. A.* 34:13A–5.3. The Local maintained that the statute mandated a definition of "grievance" that would cover matters beyond disputes arising under the terms of the collective agreement.

The Township refused to negotiate any proposal which would expand the contractual definition of a grievance to encompass disputes over matters other than those terms and conditions of employment which would be specified in the collective agreement as ultimately settled. The Township's refusal was based on its apparent belief that to so expand the grievance definition would necessarily subject such disputes to *resolution* under the contractual grievance procedure. The

Township contended that the contractual grievance procedure could encompass only grievances arising from disputes concerning the interpretation or claimed violation of the terms of the collective agreement. The previous contract between the parties had contained a grievance definition which so limited the scope of grievable matters.[1] Under the Township's position, disputes over other matters would not be cognizable as grievances under the collective agreement and would have to be presented in a forum other than that provided by the contractual grievance procedure.

As a result of the disagreement between the parties as to the negotiability of its proposal, the Local filed a petition seeking a scope-of-negotiations determination from the Public Employment Relations Commission (PERC). *See N. J. S. A.* 34:13A–5.4(d); *N. J. A. C.* 19:13–1.1 *et seq.* PERC, acknowledging that it was faced with a matter of first impression, ruled that the Local's proposal to expand the contractual grievance definition was mandatorily negotiable. PERC No. 77–59, 3 *NJPER* 124 (1977). It held further that *N. J. S. A.* 34:13A–5.3 mandated a contractual grievance definition of a breadth equivalent to what it ruled was the statute's definition of matters which must be grievable under any negotiated grievance procedure. It accordingly ordered that the parties must negotiate a contractual grievance procedure under which the scope of grievable matters would be coextensive with the language of *N. J. S. A.* 34:13A–5.3.

The Township appealed PERC's scope determination to the Appellate Division pursuant to *N. J. S. A.* 34:13A–5.4(d), naming both PERC and the Local as respondents. That court granted the motions of the New Jersey State

---

[1]Since a dispute is grievable only if it qualifies as a "grievance" within the contractual definition thereof, the definition of a "grievance" is determinative of the scope of matters grievable under a negotiated grievance procedure. Thus, the "grievance definition" and the "scope of grievable matters" are functionally identical concepts.

Patrolmen's Benevolent Association (the parent organization of the Local), the New Jersey State League of Municipalities and the Governor's Office of Employee Relations to participate in the appeal as *amici curiae*. On the motion of the New Jersey State League of Municipalities, this Court directly certified the appeal while it was pending unheard in the Appellate Division pursuant to *R.* 2:12–2. 76 *N. J.* 236 (1978). With a significant modification, we affirm PERC's ruling.

## I

■ We agree with PERC that the applicable statutory language speaks in the imperative and accordingly precludes negotiated modification of the breadth of matters which public employees must be able to appeal under any contractual grievance procedure.[2] The sentence of *N. J. S. A.* 34:13A–5.3 here pertinent states:

Public employers shall negotiate written policies setting forth grievance procedures by means of which their employees or representatives of employees may appeal the interpretation, application or violation of policies, agreements, and administrative decisions affecting them, provided that such grievance procedures shall be included in any agreement entered into between the public employer and the representative organization.

A straightforward reading of the statutory language indicates that the word "negotiate" applies to the "grievance procedure[]" itself and not to the enumeration of the matters as to which the employees "may appeal." Thus, the par-

---

[2] We are concerned in the instant case with the import of *N. J. S. A.* 34:13A–5.3 only in the situation where the employees have exercised their statutory right to organize and have selected a majority representative to represent them in negotiation for a collective agreement covering certain of the terms and conditions of their employment. We intimate no view as to the significance of the statute where employees have not so exercised their organizational rights.

ticular procedural details of the grievance mechanism are subject to determination by the negotiated agreement of the parties. These details would cover items such as time restrictions, the number of steps in the grievance procedure, the forum for resolution at each step and the forum for final, binding resolution, if any. On the other hand, regardless of the particular procedural details agreed upon, the breadth of matters appealable by the employees must comport with the statutory specification. In effect, under any negotiated grievance procedure, the employees must retain the right to prosecute an appeal over the "interpretation, application, or violation of policies, agreements and administrative decisions affecting them." We construe this enumeration to be a legislative attempt to establish a grievance "definition" which would include everything that could possibly "affect" public employees. See *post* at 110. The statutory language chosen evinces a legislative intent to ensure that all negotiated grievance procedures would provide public employees with a forum for the presentation of their complaints to their public employers on all matters "affecting them." In *N. J. S. A.* 34:13A–5.3 the Legislature has seen fit to impose a definition of the matters as to which public employees must be able to present grievances and has thus standardized the scope of all negotiated grievance procedures. The contrary arguments made by the public employer forces herein as to the alleged legislative purpose underlying the statute are refuted by the express language of its enactment. The substantive scope of the grievance mechanism has been imposed by statute, with only its procedural details left to determination by the public employer and its employees in their negotiated agreement.

 It is indisputable that the range of matters as to which employees possess the ability to present grievances to their employer constitutes an important term and condition of public employment. We have interpreted *N. J. S. A.* 34:13A–5.3 to mandate the scope of grievability in public employment. That statute ordains what must be grievable just

as we have today held it commands who must be able to present grievances. *See Red Bank Reg. Ed. Ass'n v. Red Bank Reg. High School Bd. of Ed.,* 78 *N. J.* 122 (1978). When a specific statute sets a term and condition of employment, a negotiated agreement in contravention of that statute is not authorized by the Employer-Employee Relations Act. *State v. State Supervisory Employees Ass'n,* 78 *N. J.* 54, 80 (1978). We hold that *N. J. S. A.* 34:13A–5.3 is such a statute and that the grievance definition which it mandates accordingly may not be modified by negotiated agreement.

██ Our holding that *N. J. S. A.* 34:13A–5.3 mandates the scope of matters as to which public employees must be able to present grievances applies only to the *presentation* stage of the grievance procedure. The procedural details of the grievance mechanism remain negotiable and are to be set by the negotiating parties. We agree with PERC that the parties are free to provide for a significantly narrower definition of the matters which are grievable beyond the initial presentation stage. Moreover, the decision whether to utilize binding arbitration as a means for grievance resolution is a procedural detail left to the parties to adopt or reject as the terminal step of the contractual grievance mechanism. The parties are free to agree to arbitrate all, some, or none of the matters as to which the employees' right to grieve is guaranteed by *N. J. S. A.* 34:13A–5.3. In other words, mandatory grievability does not necessarily equal mandatory arbitrability.

██ The parties may, at their option, agree that different classes of grievable matters will be subject to different types of terminal resolution or even to none at all. For example, grievances involving the application of the relevant provisions of the collective agreement or of any controlling statutes or regulations — which we have today held are incorporated by reference as terms of the collective agreement, *see State v. State Supervisory Employees, supra,* 78 *N. J.* at 80 — may be subjected to resolution by binding arbitration.

Conversely, the parties may agree that grievances not involving contractual, statutory or regulatory provisions are to be subject only to advisory arbitration or not even to be permitted to proceed beyond the initial presentation stage.[3] We emphasize that *N. J. S. A.* 34:13A–5.3 requires only that all grievances concerning the matters enumerated therein be *presentable*. The statute guarantees public employees only a right to grievance presentation. It authorizes, but does not require, the parties' negotiated grievance procedure to provide for processing of grievances beyond the presentation stage or for their resolution by arbitration or other means.

## II

■ PERC's holding that *N. J. S. A.* 34:13A–5.3 mandates the grievance presentation rights of public employees made no distinction between grievances concerning matters affecting the terms and conditions of public employment and other types of employee complaints. Its ruling would have *N. J. S. A.* 34:13A–5.3 apply to disputes over all matters as to which public employees might wish to present complaints to their employers. We believe that the statute must be

---

[3]The present collective agreement between *amicus* New Jersey State Policemen's Benevolent Association and the State of New Jersey covering its Law Enforcement Unit contains a grievance definition which exemplifies the differential treatment of various types of grievances. A grievance is defined as

1. A claimed breach, mis-interpretation or improper application of the terms of [the collective agreement] ; or

2. A claimed violation, mis-interpretation or mis-application of rules or regulations, existing policy, or orders, applicable to the agency or Department which employs the grievant affecting the terms and conditions of employment.

The agreement's grievance procedure provides that only grievances of the first type are subject to resolution through binding arbitration. The non-contractual grievances in the second category are not subject to impartial resolution at the terminal step of the grievance procedure.

interpreted as requiring only that public employees be able to grieve the "interpretation, application or violation" of those "policies, agreements or administrative decisions" which affect the terms and conditions of public employment as that concept has been defined in our cases. *See State v. State Supervisory Employees Ass'n, supra,* 78 *N. J.* at 67; *Dunellen Bd. of Ed. v. Dunellen Ed. Ass'n,* 64 *N. J.* 17 (1973). We accordingly hold that the scope of mandatory grievability under *N. J. S. A.* 34:13A–5.3 does not extend beyond disputes of the type enumerated in the statute which affect the terms and conditions of public employment.

Public employees in New Jersey are vested with a constitutional right concerning the presentation of their grievances to their public employer. *N. J. Const.* (1947), Art. I, para. 19 provides, in pertinent part:

Persons in public employment shall have the right to organize, present to and make known to the State, or any of its political subdivisions or agencies, their grievances and proposals through representatives of their own choosing.

We recognized in *Lullo v. Intern. Assoc. of Fire Fighters,* 55 *N. J.* 409 (1970), that the purpose of Art. I, para. 19, was to secure the rights therein granted to public employees "against legislative erosion or denial." 55 *N. J.* at 416; *see also Board of Ed., Borough of Union Beach v. N. J. E. A.,* 53 *N. J.* 29, 44–45 (1968). PERC argues that since the constitutional provision does not explicitly limit the meaning of the word "grievances" to grievances concerning matters affecting the terms and conditions of public employment, *N. J. S. A.* 34:13A–5.3 should not be construed to contain such a restriction on the grievance presentation rights therein granted to public employees. It contends in the alternative that should such a limitation be found to be implicit in Art. I, para. 19, this Court should consider *N. J. S. A.* 34:13A–5.3, as it pertains to grievance presentation rights, to be an exercise of the Legislature's right to grant public employees

more expansive rights than those secured by the Constitution. *See Lullo, supra,* 55 *N. J.* at 416.

We find it unnecessary to reach the constitutional issues raised by PERC. In the use of the words "affecting them" in the relevant sentence of *N. J. S. A.* 34:13A–5.3, we discern a legislative intent to have the statutory grievance presentation rights of public employees limited to grievances concerning matters affecting the terms and conditions of public employment. Indeed, we view the statutory formulation as a legislative attempt to encompass all such matters within its "definition" of a grievance. "Terms and conditions of employment" in this sense refers to those matters which are the essence of the employment relationship. This concept is clearly the core meaning of the term "grievances" as used in Art. I, para. 19. At the very least, that constitutional provision secures to public employees the right to present grievances with respect to those matters which bear most directly upon their employment. It may be that other matters whose impact upon the employment relationship is more attenuated could be comprehended within the constitutional meaning of the term "grievances." However, we believe that *N. J. S. A.* 34:13A–5.3 reflects a legislative determination to deal with grievance presentation only in regard to the aspect of the employment relationship most vital to public employees — the terms and conditions of their employment. The Legislature has sought to effectuate the constitutional right by requiring that grievances pertaining to the terms and conditions of public employment be presentable to the public employer pursuant to the negotiated grievance procedure mandated by statute. We find that construing the phrase "affecting them" as used in *N. J. S. A.* 34:13A–5.3 to limit grievable matters to those which affect the terms and conditions of public employment comports with the general sense of Art. I, para. 19 and the overall thrust of the Act itself.

Moreover, there is a very sound and pragmatic reason why the drafters of *N. J. S. A.* 34:13A–5.3 utilized the phrase

"affecting them." All of the terms and conditions of public employment cannot be anticipated so as to be comprehensively set by the terms of the collective agreement negotiated between the parties. The language employed in *N. J. S. A.* 34: 13A–5.3 makes clear that grievance presentation rights are not limited to disputes over matters affecting those terms and conditions of employment which are set in the collective agreement. Disputes over matters not covered by the collective agreement but nevertheless qualifying as terms and conditions of employment — in the sense of bearing directly upon the employment relationship — must be presentable as grievances under the grievance procedure negotiated between the parties. The statutory language removes any doubt that the scope of grievable matters is confined to grievances arising under the terms of a collective agreement.

Analysis of the scope of the right of public employees to present their grievances to their governmental employers must take cognizance of the fact that these persons possess rights not only as public employees but also as citizens of this State. Under *N. J. Const.* (1947), Art. I, para. 18, they, like all other citizens, possess the right to petition the government for the "redress of grievances." Public employees, of course, possess the right to seek to influence governmental decision-making to the same extent and through the same means as all other citizens — through the customary political channels and through the public input provisions of the Administrative Procedure Act, *N. J. S. A.* 52:14B–1 *et seq.* Moreover, as an authoritative commentator in this area has observed:

\* \* \* [P]ublic employees, even without collective bargaining, can and normally do participate in determining the terms and conditions of employment. Many can vote and all can support candidates, organize pressure groups, and present arguments in the public forum. Because their terms and conditions of employment are decided through the political process, *they have the right as citizens to participate*

*in the decisions which affect their employment.* Such a right is not enjoyed by employees in the private sector. \* \* \*

> [Summers, "Public Employee Bargaining: A Political Perspective," 83 *Yale L. J.* 1156, 1160 (1974) (emphasis supplied, footnote omitted)]

And the United States Supreme Court has recently noted:

Through exercise of their political influence as a part of the electorate, [public] employees have the opportunity to affect the decisions of government representatives who sit on the other side of the bargaining table.

> [*Abood v. Detroit Bd. of Ed.*, 431 *U. S.* 209, 228, 97 *S. Ct.* 1782, 1796, 52 *L. Ed.* 2d 261 (1977)]

The Supreme Court has held that public employees do not give up their rights as citizens by virtue of their public employment. *City of Madison Joint School District v. Wisconsin Employment Relations Commission*, 429 *U. S.* 167, 97 *S. Ct.* 421, 50 *L. Ed.* 2d 376 (1976) (principle of exclusive representation cannot constitutionally bar a public employee who, like any other citizen, might wish to express his view about governmental decisions concerning labor relations); *see also Abood, supra,* 431 *U. S.* at 230, 97 *S. Ct.* at 1797 ("public employees are free to participate in the full range of political activity open to other citizens").

In New Jersey and many other states, public employees have been endowed with rights in addition to those they enjoy as citizens. New Jersey public employees possess a constitutional right by virtue of their governmental employment which they would not otherwise possess as citizens — the right to compel government, in its capacity as their employer, to sit down and listen to their grievances and proposals. In addition, the Legislature has granted them a statutory right, under *N. J. S. A.* 34:13A–5.3, to engage in collective negotiations with their employer. Professor Summers has described the significance of such a right:

[T]he bargaining process gives public employees special access to the political process. They are not limited to speeches at public meetings, petitions, circulars or personal presentations, as other interest groups are. The union, representing all employees in bar-

gaining, can compel responsible officials to sit down at the bargaining table, confront them face to face, engage in discussion, respond to arguments, state positions, provide reasons and supply information. The process of interchange continues through countless meetings of interminable hours until either agreement is reached or all possibilities are exhausted. This direct and intensive access to responsible officials, with its structured process of persuasion, gives the union an especially effective voice in the decision-making.

> [Summers, "Public Sector Bargaining: Problems of Governmental Decision-Making," 44 *Cinn. L. Rev.* 669, 674 (1976); *see also* Summers, *supra*, 83 *Yale L. J.* at 1164]

The combination of the public employees' rights as citizens and their special rights as governmental employees arguably

gives the employees more influence in the decision making process than is possessed by employees similarly organized in the private sector.

> [*Abood, supra*, 431 *U. S.* at 229, 97 *S. Ct.* at 1796]

Persons with a special relationship to government — that of employment — have a legitimate need for a special means of access to government in its capacity as an employer with respect to problems and concerns arising from and affecting that relationship. This access to government in its capacity as an employer is over and above the access to government available to them as citizens. As Professor Summers has noted, op. cit., such preferred access is necessary because of the fact that the political interests of the governmental decision-makers and the economic interests of the voting public, both as taxpayers and users of public services, are inherently adverse to the employment interests of public employees in better pay and working conditions.

However, with respect to the presentation of public employees' views to their governmental employers on matters not directly pertaining to the employment relationship, there would seem to be no justification for treating public employees any differently than citizens who are not employed by government. Their need for a means of direct access to government not enjoyed by other citizens is far less compelling with respect to matters less vitally concerned with their

employment. Although almost any action by a governmental employer has some impact upon the terms and conditions of employment of its employees, in many instances that effect is too attenuated for the particular subject matter to warrant the preferred access to the governmental employer resulting from a finding that the matter is mandatorily negotiable. For this reason, employee proposals seeking to influence the actions of a public employer when it acts in a governmental capacity — rather than as an employer — are most appropriately presented through the political process and not through the labor relations process.

This is not to say that as to matters other than terms and conditions of employment public employees should not have any access to their governmental employer. In many cases the employer would be "well-advised" voluntarily to consult with its employees to receive the benefit of their expertise in a particular field. *See Ridgefield Park Ed. Ass'n v. Ridgefield Park Bd. of Ed.*, 78 *N. J.* 144 (1978); *Dunellen, supra,* 64 *N. J.* at 31-32. However, the preferred access for public employees resulting from the statutory requirement of mandatory good faith negotiation and compulsory grievance presentation, with its consequent enhancement of the effectiveness of their voice in governmental decision-making, is inappropriate with respect to matters which do not affect the terms and conditions of public employment. Only when government acts in the capacity of an employer, as opposed to discharging governmental policy-making functions, is such preferred access necessary to protect the legitimate interests of public employees in the determination of the terms and conditions of their employment.

We have noted that in choosing to use the term "collective negotiation" in the Employer-Employee Relations Act, the Legislature sought to distinguish negotiation in the public sector from collective bargaining. *See Lullo, supra,* 55 *N. J.* at 440. The Legislature determined that the concept of collective bargaining as it had developed in the private

sector was not suitable in the public employment context. In the private sector, collective bargaining is mandatory as to all matters pertaining to the terms and conditions of employment and is permissive as to all other matters. *See NLRB v. Wooster Div. of Borg-Warner Corp.*, 356 *U. S.* 342, 78 *S. Ct.* 718, 2 *L. Ed.* 2d 823 (1958). Thus, in the private sector the prerogatives of management are those of the private employer to share with its employees or retain exclusively as it sees fit. The powers of government may not be similarly surrendered to its employees. The determination of governmental policy at the negotiating table or in a grievance resolution proceeding is inherently antithetical to our system of government. Only with respect to those matters as to which government acts as an employer are the interests of public employees sufficient to warrant the slight deviation from the political process resulting from mandatory collective negotiation.

By its express terms, *N. J. S. A.* 34:13A–5.3 authorizes only collective negotiation of and agreement upon terms and conditions of public employment. The portion of that statute pertaining to grievance presentation contains no similarly explicit limitation. The Legislature instead incorporated that limitation into the relevant sentence by the use of the words "affecting them," which we construe to have been used as a shorthand equivalent for "affecting the terms and conditions of their employment." The inclusion of the words "affecting them" in *N. J. S. A.* 34:13A–5.3 evidences a legislative intent for the statutory provision to refer only to grievances over the matters enumerated which affect the terms and conditions of employment. In light of the overall restriction of the Act's applicability to the terms and conditions of public employment, if the Legislature had intended the grievance presentation rights mandated by *N. J. S. A.* 34:13A–5.3 to be more expansive it would have so provided explicitly.

A consequence of our holding herein is that the scope of mandatory grievability is substantially equivalent

to the scope of mandatory negotiability. Just as the public employers are required to negotiate with respect to the terms and conditions of public employment, so must they provide their employees with a forum for the presentation of their grievances pertaining thereto. However, an important difference does exist between what may be grieved and what may be negotiated. We have today held that the parties may not agree to contravene specific statutes or regulations setting particular terms and conditions of public employment and therefore that proposals to do so are not mandatorily negotiable. *State v. State Supervisory Employees Ass'n, supra,* 78 *N. J.* at 80. We have further held that such statutes and regulations are effectively incorporated by reference as terms of any collective agreement covering employees to which they apply. *Id.* As such, disputes concerning their interpretation, application or claimed violation would be cognizable as grievances subject to the negotiated grievance procedure contained in the agreement. However, as is the case with negotiated agreements, no grievance resolution may contravene a statutory or regulatory mandate. Nevertheless, the issues of whether and how such statutes and regulations apply to authorize or prohibit particular actions by the public employer or the employees are proper subjects of "appeal" pursuant to *N. J. S. A.* 34:13A–5.3. The inability of the parties to agree to contravene statutory or regulatory imperatives pertaining to the terms and conditions of public employment precludes negotiability. However, the fact that no grievance may be resolved in a manner that would contravene any applicable statutes or regulations does not mean that the grievability of disputes concerning their alleged violation in a particular case is similarly precluded.[4]

---

[4]In this regard, we note that in *N. J. S. A.* 40A:14–147 *et seq.,* the Legislature has dealt comprehensively with the matter of discipline of municipal police employees — the subject which the Local herein seeks to have brought within the ambit of the parties' negotiated grievance procedure. If the disciplinary action taken by the

To this extent, the scope of grievability is more expansive than the scope of negotiability.

Finally, in the 1974 amendment to *N. J. S. A.* 34:13A–5.3, the Legislature added the following sentence:

Notwithstanding any procedures for the resolution of disputes, controversies or grievances established by any other statute, grievance procedures established by agreement between the public employer and the representative organization shall be utilized for any dispute covered by the terms of such agreement.

[*L.* 1974, *c.* 123, § 4]

By reason of our holding today, the terms of all negotiated grievance procedures must "cover" grievances concerning the "interpretation, application or violation of policies, agreements and administrative decisions" affecting the terms and conditions of public employment. The negotiated grievance procedures to which the amendment accords primacy will therefore supplant statutory dispute resolution mechanisms only as to disputes of the type enumerated in *N. J. S. A.* 34:13A–5.3 which directly and intimately impact upon the terms and conditions of public employment. Employees remain free to resort to those statutory procedures for such other disputes as may be within their purview which do not pertain to the terms and conditions of employment. Moreover, public employers remain free and indeed might be well-advised voluntarily to provide a forum for the presentation of any complaints from their employees concerning such "extra-employment" matters.

Subject to the foregoing modification, the decision of the Public Employment Relations Commission is affirmed.

CONFORD, P. J. A. D. (temporarily assigned), dissenting. This case originated in a scope-of-negotiations proceeding

public employer is in fact premised upon one of the statutorily enumerated grounds, and its underlying factual predicate is proven, the validity of the public employer's determination that the particular conduct involved constituted a basis for the imposition of a disciplinary sanction must be upheld in any grievance resolution proceeding.

filed with the Public Employment Relations Commission (PERC) by the respondent policemen's union. Its complaint was that the employer township refused to negotiate grievance procedures to be used in cases of disciplining policemen for infractions and to incorporate such procedures in the collective labor agreement between the parties. A disciplinary procedure was in existence by reason of regulations adopted unilaterally by the township. The township refused the union's request on the ground that discipline did not concern terms and conditions of employment and that negotiated grievance procedures need only concern matters included in the collective agreement. PERC responded with a ruling which, as I read it, does not specifically decide whether the union's request is justified, since it does not address that request in terms. However the implication of the decision seems to favor the union as it rejects the township's argument that negotiated grievance procedures may not include items not constituting a mandatory subject of negotiations under the criteria of *Dunellen Bd. of Ed. v. Dunellen Ed. Assn.*, 64 *N. J.* 17 (1973). The decision also stresses the breadth of the statutory language: "Public employers shall negotiate written policies setting forth grievance procedures by means of which their employees or representatives of employees may appeal the interpretation, application or violation *of policies, agreements and administrative decisions affecting them* * * *." (emphasis added).

PERC held, citing *Lullo v. Intern. Assoc. of Fire Fighters,* 55 *N. J.* 409, 419 (1970), that the foregoing quoted language was mandatory and imposed an affirmative duty on employers to "provide a forum by means of which public employees or their representatives may appeal the interpretation, application or violation of policies, agreements and administrative decisions affecting them." However PERC made it clear that the extent of the grievance machinery to be adopted and whether it should include binding arbitration as a last step was subject to voluntary agreement of both parties.

If the PERC decision means that regulations concerning discipline of policemen are a mandatory subject of negotiation of grievance procedures, I am in accord with it. It is not fairly disputable, in my judgment, that disciplining of policemen for infractions involves "administrative decisions affecting" the officers. If, as the township contends, the range of permissible grievance procedure negotiations were confined to appeals concerning substantive provisions in the collective agreement, the statutory intent could have been met by reference to appealing disputes as to "agreements," without including reference to "policies" and "administrative decisions." To me, the natural meaning of the latter terms, in the light of the background of the subject in the constitutional guaranty of the right of public employees to present their "grievances and proposals," *Const.* 1947, Art. I, Par. 19, strongly suggests that if in fact an "administrative decision" adversely impacts upon an employee, it is then, even if not strictly a matter of terms and conditions of employment in the narrow *Dunellen* sense, within the range of the subject matter of written grievance procedures which the parties "are mandated to negotiate."[1] See *Lullo v. Intern. Assoc. of Fire Fighters, supra,* 55 *N. J.* at 437.

I am only in partial agreement with PERC and with the Court, if I understand its opinion, as to the extent of grievance procedures to which the employer need agree. I concur in the view that agreement may be confined to specified stages of grievance prosecution, perhaps even to only a first-stage presentation. The obligation to negotiate does not imply an obligation to arrive at agreement for any given number of steps in the grievance procedure so long as there is *bona fide* interchange of views and proposals be-

---

[1] All of the foregoing discussion assumes that any agreement as to grievance procedure in this area does not necessarily supersede any affirmative remedy an employee might have under the Civil Service statutes since *N. J. S. A.* 34:13A–5.3 precludes denying any employee any rights under Civil Service laws or regulations.

tween the parties. But I would qualify the power of the employer to agree to binding arbitration as the terminal stage of a grievance procedure if the subject matter of the grievance entailed the exercise of inherent managerial judgment or discretion. That, for example, would apply with respect to the disciplining of an employee policeman — the issue here directly presented. It would contravene public policy for an arbitrator to be enabled to supersede the discretionary determination of an administrative officer vested with statutory authority to determine the discipline to be imposed upon a policeman for an infraction of rules and regulations.[2] But I would see no objection to an arbitration to determine the disputed question of fact as to whether an infraction had been committed. Such fact-finding is not an inherent managerial function.

Consequently, to the extent that PERC's opinion would allow agreement for binding arbitration as to decisions resting in managerial discretion, I disagree with it.

My dissent from the Court's adjudication in this case is based upon its holding that grievance procedures may concern only such " 'policies, agreements or administrative decisions' which affect the terms and conditions of public employment as that concept has been defined in our cases." (p. 108). This would limit grievances to the area of mandatory negotiation defined in *Dunellen Bd. of Ed. v. Dunellen Ed. Assn., supra,* and therefore absolutely exclude from the grievance machinery matters predominantly of managerial policy even if also appreciably affecting employees. See 64 *N. J.* at 29, 31. I believe this determination is fundamentally erroneous. The whole cast of the statutory section, *N. J. S. A.* 34:13A–5.3, connotes that "grievances" is a different subject of legislative concern and treatment from that of terms and conditions

---

[2] My view might differ if a statute expressly permitted binding arbitration in the situation posed. *Cf. L.* 1977, c. 85 (*N. J. S. A.* 34:13A–16f. (4)), permitting binding arbitration even in permissive areas of contract negotiation as to police and firemen.

of employment. The latter is nowhere defined. To the contrary, the subject matter of grievance procedures required to be negotiated is expressly defined as appeals respecting disputes over "policies, agreements and administrative decisions affect[ing]" the employees. Since "terms and conditions" of employment are normally incorporated in the "agreement" of the parties, the use by the Legislature of the terms "policies" and "administrative decisions" *in addition to* "agreements" in the grievance part of the statute plainly indicates an intent that grievances could properly concern more than terms and conditions of employment.

It is, moreover, obvious that a whole array of items can "affect" employees, as such, beyond the narrow confines of terms and conditions of employment as closely circumscribed by *Dunellen.* So to limit the subject matter of grievance procedures would, in my judgment, stifle a healthy and stable labor relations atmosphere in the public sector and tend to defeat the originally stated purpose of the employer-employee relations act, *i. e.,* "to promote permanent, public and private employer-employee peace * * *." *N. J. S. A.* 34:13A–2.

I am convinced that the practical implementation of the statutory provisions for negotiation of grievance procedures now widely practiced throughout the State is to comprehend areas of employment grievance beyond the limits of the *Dunellen* criteria of mandatorily negotiable terms and conditions of employment. I believe that PERC soundly perceives this to be the fact and that its holding here (subject to the qualification as to arbitration stated above) is consonant not only with the statutory intent but also with sound principles of employer-employee relations in the public sector.

*For affirmance as modified*—Chief Justice Hughes and Justices Sullivan, Pashman, Clifford, Schreiber and Handler—6.

*Concurring in part and dissenting in part*—Judge Conford—1.