174 N.J. Super. 468 (1980)
416 A.2d 980
HUNTERDON CENTRAL HIGH SCHOOL BOARD OF EDUCATION, RESPONDENT,
v.
THE HUNTERDON CENTRAL HIGH SCHOOL TEACHERS' ASSOCIATION, APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 19, 1980.
Decided June 19, 1980.
*470 Stephen E. Klausner argued the cause for appellant.
Mark J. Blunda argued the cause for respondent (Murray, Granello & Kenney, attorneys; James P. Granello, of counsel; Mark J. Blunda and Russell P. Goldman, on the brief).
Sidney H. Lehmann, General Counsel, filed a statement in lieu of brief on behalf of Public Employment Relations Commission (Don Horowitz, Deputy General Counsel, on the statement).
Before Judges SEIDMAN, MICHELS and MILMED.
The opinion of the court was delivered by SEIDMAN, P.J.A.D.
*471 The important issue presented by this appeal is whether the granting to public school teachers of paid leaves of absence for religious purposes by a district board of education is a negotiable term and condition of employment. On the petition of the board for a scope of negotiations determination, the Public Employment Relations Commission (PERC) held that the granting of such leaves, which otherwise would qualify as a term and condition of employment, would nevertheless be an abridgment of the Establishment Clause of the First Amendment to the United States Constitution, and thus was outside the scope of collective negotiations and not arbitrable.
A teacher in the employ of the Hunterdon Central High School Board of Education (board) submitted a written request for permission to take December 8, 1978 as a "religious leave day." The board's personnel director granted the request on condition that the leave be taken either without pay or charged against the allowable number of leave days with pay for personal reasons, as provided in the contract between the board and the Hunterdon Central High School Teachers' Association. The teacher protested, claiming discrimination in that other teachers had been paid for absences on religious grounds.
After the teacher unsuccessfully sought redress through the contractual grievance procedure, the association availed itself of the arbitration provision in the contract and served upon the board two demands for arbitration. One alleged a "[u]nilateral change in temporary leave policy  loss of religious holidays." The other complained of "[i]mproper denial of religious holidays." The remedy sought was "[g]ranting of said religious holidays  restriction of personal days." The board filed with PERC a Petition for Scope of Negotiations Determination. The issue raised therein was whether "a public employer and public employees [may] agree to allow certain members of the bargaining unit to take days off from work for the purpose of religious observation without a deduction of either a personal day, vacation day or a day's wage." Arbitration was voluntarily stayed pending PERC'S consideration of the petition.
*472 In due course PERC issued a Decision and Order in which it conceded that "interpreting matters of constitutional law is not within our area of expertise," but nevertheless held as follows:
... [W]e find that the granting of additional days off with pay, i.e., not charged to personal days, vacation or any other leave available to all employees, specifically for the observance of religion does violate the constitutional prohibitions against the establishment of religion. These are additional leave days that can only be granted for religious observances; and a benefit that non-religious employees can never enjoy. It "aids all religions as against non-believers." Torcaso v. Watkins, supra at 495 [367 U.S. 488, 81 S.Ct. 1680, 6 L.Ed.2d 982 (1961)]. Accordingly, the Commission finds that the demand for arbitration herein is outside the scope of collective negotiations and is neither negotiable nor arbitrable. The request for permanent restraints of arbitration is granted.
On its appeal from this decision the association first disputes the jurisdiction of PERC to dispose of the scope issue on a constitutional basis, contending that by doing so PERC usurped the function of the courts. It is to be noted that the association did not resist the board's scope petition on that ground. However, we need not pursue the matter of possible waiver because we are satisfied on the facts here present that PERC did not exceed its jurisdiction.
PERC'S authority to define the scope of collective negotiations is found in the New Jersey Employer-Employee Relations Act, N.J.S.A. 34:13A-1 et seq., specifically § 5.4(d), which provides:
The commission shall at all times have the power and duty, upon the request of any public employer or majority representative, to make a determination as to whether a matter in dispute is within the scope of collective negotiations. The commission shall serve the parties with its findings of fact and conclusions of law. Any determination made by the commission pursuant to this subsection may be appealed to the Appellate Division of the Superior Court. [Emphasis supplied.]
It is now settled that PERC has primary jurisdiction to make such determination. Ridgefield Park Ed. Ass'n v. Ridgefield Park Bd. of Ed., 78 N.J. 144, 154 (1978). As was emphasized in State v. State Supervisory Employees Ass'n, 78 N.J. 54, 83, 393 A.2d 233, 247 (1978), "[n]o court of this State is empowered to make this initial determination." See Bernards Tp. v. Bd. of Ed. Bernards Tp. Ed. Ass'n, 79 N.J. 311, 316 (1979).
The area of mandatory negotiation generally encompasses terms and conditions of employment, i.e.,

*473 ... Those matters which intimately and directly affect the work and welfare of public employees and on which negotiated agreement would not significantly interfere with the exercise of inherent management prerogatives pertaining to the determination of governmental policy. [State v. State Supervisory Employees Ass'n, supra, 78 N.J. at 67.]
The subject matter of the dispute in this case is, broadly, leaves of absence. This is unquestionably a matter that directly and intimately affects the terms and conditions of employment and, as such, would ordinarily be a subject of mandatory negotiations between a public employer and the employee representative. Piscataway Tp. Bd. of Ed. v. Piscataway Main., 152 N.J. Super. 235, 244 (App.Div. 1977). But proposals concerning terms and conditions of employment that otherwise might be mandatorily negotiable may, nevertheless, be circumscribed by specific statutes or other applicable rules of law. State Supervisory Employees Ass'n, supra, 78 N.J. at 72-75. See also West Windsor Tp. v. Public Employment Rel. Comm., 78 N.J. 98, 116 (1978); and cf. Piscataway Tp. Bd. of Ed. v. Piscataway Main., supra. Thus, a board of education cannot agree on hours or compensation of teachers in violation of specific terms of the education laws or in violation of specific departmental rules or regulations. Englewood Bd. of Ed. v. Englewood Teachers, 64 N.J. 1, 7 (1973). We held in Piscataway Tp. Bd. of Ed. v. Piscataway Main., supra, that a bargaining contract providing for extended leave benefits to custodial employees as a matter of right was beyond the statutory authority of the board of education, which was obligated by statute to deal with each such case on an individual basis. And in In re Byram Tp. Bd. of Ed., 152 N.J. Super. 12, 26 (App.Div. 1977), we intimated that a proposal dealing with teacher workloads could not have the effect of reducing the employment time of teachers below the minimum required by statute for the full employment of teachers.
We have no doubt whatever that the resolution of issues such as those in the foregoing illustrative citations are fully within the competence of PERC in a scope of negotiations proceeding, notwithstanding that the outcome may depend upon the application of a relevant statute. The authority of PERC to deal with matters of law is recognized in Bernards Tp. Bd. of Ed. v. Bernards Tp. Ed. Ass'n, supra:

*474 ... In carrying out its duties, PERC will at times be required to interpret statutes other than the Employer-Employee Relations Act. Indeed, in no other way could that body implement our holding in State Supervisory Employees that the terms of a collective agreement cannot contravene a specific legislative enactment. To therefore hold that PERC is ousted of jurisdiction in any controversy involving an asserted conflict between a collective agreement and a statute not part of the Employer-Employee Relations Act would deprive our courts of that body's expertise in a large class of scope of negotiations disputes. [79 N.J. at 316-317]
In the instant case the jurisdiction of PERC was properly invoked by the board's petition for a scope of negotiations determination, since a dispute had arisen between the board and the association as to whether paid leaves of absence for religious purposes constituted a mandatorily negotiable term and condition of employment. The parties had a contractual obligation to arbitrate, but, preliminarily, PERC had to make a scope determination because "[a] matter which is not legally negotiable in the first place cannot be arbitrable." Ridgefield Park Ed. Ass'n v. Ridgefield Park Bd. of Ed., supra, 78 N.J. at 160. The association insists, however, that since a constitutional question was involved, PERC was forbidden to decide it. The association apparently relies upon the oft-stated principle in federal courts that constitutional questions are "unsuited to resolution in administrative hearing procedures." Califano v. Sanders, 430 U.S. 99, 109, 97 S.Ct. 980, 986, 51 L.Ed.2d 192 (1972). But the rule is typically framed in terms barring administrative agencies from passing on the constitutionality of legislation. Johnson v. Robinson, 415 U.S. 361, 368, 94 S.Ct. 1160, 1166, 39 L.Ed.2d 389, 398 (1974). Thus, in Fischer v. Bedminster Tp. 5 N.J. 534, 542 (1950), the court rejected an exhaustion-of-administrative-remedies defense where the issue was "not within the jurisdiction of the local board of adjustment." See, also, Baldwin Constr. Co. v. Essex Cty. Bd. of Tax., 24 N.J. Super. 252, 271-272 (Law Div. 1952), aff'd 27 N.J. Super. 240 (App.Div. 1953), aff'd 16 N.J. 329 (1954); and cf. River Dell Ed. Ass'n v. River Dell Bd. of Ed., 122 N.J. Super. 350 (Law Div. 1973).
Here, PERC did not address the constitutionality of any statute or other rule of law, nor is the issue one of exhaustion of remedies. Rather, the question is whether in exercising its *475 conceded jurisdiction over a scope question, PERC improperly rested on a constitutional ground. The board argues that if an administrative agency makes a decision within its "special area of competence," i.e., the negotiability of an item, it does not exceed its jurisdiction merely because it applies relevant law, in this case the First Amendment to the United States Constitution, in order to reach that decision. We agree. PERC'S delegated authority is broad enough to enable it to apply laws other than that which it administers, and should be construed "so as to permit the fullest accomplishment of the legislative intent," Plainfield Bd. of Ed. v. Plainfield Ed. Ass'n, 144 N.J. Super. 521, 524 (App.Div. 1976). We discern no sound reason to deprive PERC of the power to declare a proposal nonnegotiable on the ground that its acceptance would be constitutionally objectionable. It has been said that "administrative agencies are competent to pass upon constitutional issues germane to proceedings before them," and that "such action is necessary so as to better focus the issues for judicial review, if such action is later necessary." Alcala v. Wyoming State Bd. of Barber Exam'rs., 365 F. Supp. 560, 564 (D.Wyo. 1973). In this regard it is significant to observe that the State Board of Education, in resolving a controversy arising under the school laws, N.J.S.A. 18A:6-9, e.g., whether a nontenured teacher's contract was not renewed allegedly in retaliation for her exercise of the right of free speech, could be called upon to resolve a constitutional issue. See Winston v. South Plainfield Bd. of Ed., 64 N.J. 582, 586-587 (1974).
While we conclude that PERC did not exceed its authority in resolving the issue before it on a constitutional ground, we should emphasize that where the issue is one of law the agency's decision does not carry a presumption of validity, and it is for the court to decide if the decision is in accordance with the law. Biancardi v. Waldwick Bd. of Ed., 139 N.J. Super. 175, 177 (App.Div. 1976), aff'd 73 N.J. 37 (1977). We turn now to a consideration of whether PERC correctly concluded that the *476 granting of paid leaves of absence for religious purposes would be violative of the Establishment Clause of the First Amendment, U.S.C.A. Const. Amend. I, which requires strict governmental neutrality with respect to religion. Resnick v. East Brunswick Tp. Bd. of Ed., 77 N.J. 88, 105 (1978).
To withstand an Establishment Clause attack, state action must have a secular legislative purpose and a primary effect that neither advances nor inhibits religion, Abington School Dist. v. Schempp, 374 U.S. 203, 222, 83 S.Ct. 1560, 1571, 10 L.Ed.2d 844, 858 (1963), and must not foster "an excessive government entanglement with religion." Walz v. Tax Commission, 397 U.S. 664, 674, 90 S.Ct. 1409, 1414, 25 L.Ed.2d 697, 704 (1970). See Resnick v. East Brunswick Tp. Bd. of Ed., supra, 77 N.J. at 108.
The number of reported cases in point is surprisingly small. Only two have been brought to our attention, both of which were cited by PERC. Only California appears to have considered the constitutional validity of religious leaves for public employees. In Mandel v. Hodges, 54 Cal. App.3d 596, 127 Cal. Rptr. 244 (D.Ct.App. 1976), the court struck down a proposed order by the governor allowing all state employees three hours off with pay on Good Friday for the avowed purpose of worship. The court reasoned that such a broad-based action did not reflect a secular purpose because its express aim was to permit worship, had the primary effect of advancing religion by affording employees the opportunity and encouragement to practice their religion, and might result in excessive entanglement by reason of the disruption of state business and potential for political abuse. But in California School Emp. Ass'n v. Sequoia U. High School, 67 Cal. App.3d 157, 136 Cal. Rptr. 594 (D.Ct.App. 1977), a different result was reached where a school district's collective bargaining agreement designated Good Friday as a paid holiday for all employees as part of the wage and fringe benefit agreement. The court approved the holiday, finding present none of the objections noted in Mandel. That the day *477 happened to be a religious one was incidental to its main role of affording employees a longer Spring vacation; it was not expressly intended to permit worship. The court also found an absence of excessive governmental involvement in that the holiday arose out of employer-employee negotiations and not a governor's order.
While we do not necessarily subscribe to all that was said by the court in the two California cases, it appears to us that the situation here contains more of the features of Mandel than of California School Emp. Ass'n, although the proposal in our case seems to us to be more violative of the Establishment Clause than the governor's order in Mandel. We are of the view that agreement by a board of education to paid leaves of absence for religious purposes such as those contemplated here would not meet the tripartite test. Clearly, there would be no secular purpose in such provision; indeed, the sole purpose would be to permit certain teachers to be absent with pay for no reason other than religious observance, even though the number of allowable days might be specifically limited. Moreover, the effect would be to enhance religion, since only those of professed religious faiths would benefit to the exclusion of those who had no religious persuasion. Such provision would not only accord teachers the opportunity to worship, it would encourage them to do so. Finally, since teachers availing themselves of such leaves of absence would be paid, the resultant expenditure of tax money would arguably be so intertwined with religious observance as to constitute excessive entanglement with religion.[1]
The decision of the Public Employment Relations Commission is accordingly affirmed.
NOTES
[1] There is no issue here of the board's duty reasonably to accommodate an employee's desire to observe the holy days of his religion by allowing a reasonable amount of unpaid leave without fear of penalty, cf. Rankins v. Commission on Prof. Comp. of Ducor, 24 Cal.3d 167, 154 Cal. Rptr. 907, 593 P.2d 852 (Sup.Ct. 1979), or by permitting such absences to be charged against allowable paid leave days for reasons of personal necessity.