■ In the Matter of MAINE-ENDWELL TEACHERS' ASSOCIATION, Appellant, v BOARD OF EDUCATION OF MAINE-ENDWELL CENTRAL SCHOOL DISTRICT, Respondent. [771 NYS2d 246]—

Crew III, J. Appeal from a judgment of the Supreme Court (Hester, Jr., J.), entered October 4, 2002 in Broome County, which dismissed petitioner's application, in a proceeding pursuant to CPLR article 78, to review a determination of respondent denying a request by two teachers for paid leave pursuant to article XIX (D) of the parties' collective bargaining agreement.

Petitioner, a union of public school employees, and respondent entered into a collective bargaining agreement, which provided, inter alia, that upon written request, teachers could receive up to three paid days for religious observance. While respondent had heretofore adhered to the terms of the religious observance clause, on or about September 14, 2001, respondent refused a request by two teachers for paid leave for religious observance and directed the teachers to use personal days instead. As a consequence, petitioner commenced this CPLR article 78 proceeding seeking a judgment compelling respondent to comply with the religious observance clause of the collective bargaining agreement. Following service of a verified answer, Supreme Court determined that the clause in question was unconstitutional as it was in contravention of the Establishment Clause of the US Constitution (*see* US Const 1st Amend). Petitioner appeals from the judgment dismissing its application for review.

We are of the view that the contractual provision at issue does not offend the Establishment Clause in that it does not impermissibly advance religion by coercing members of the union to profess a religious belief (*see Lee v Weisman,* 505 US 577 [1992]). As a matter of fact, the religious observance clause

imposes no requirements regarding which religious holidays may be invoked. As such, the clause is more properly viewed as a reasonable accommodation of the teachers' religious beliefs, which is not violative of the Establishment Clause (*see id.* at 627 [Souter, J., concurring] ["The State may 'accommodate' the free exercise of religion by relieving people from generally applicable rules that interfere with their religious callings."]; *Lynch v Donnelly,* 465 US 668, 673 [1984] [US Constitution "affirmatively mandates accommodation, not merely tolerance, of all religions"]; *McDaniel v Paty,* 435 US 618, 639 [1978] [Brennan, J., concurring] [recognizing that in "limited situations . . . government may take cognizance of religion for purposes of accommodating our traditions of religious liberty"]). Indeed, this state, as well as the federal government, have enacted legislation mandating the reasonable accommodation of employees' religious needs (*see* Executive Law § 296 [10] [b]; Civil Rights Act of 1964, 42 USC § 2000e [j]), and the US Supreme Court implicitly has held that such accommodation is constitutional (*see Ansonia Bd. of Educ. v Philbrook,* 479 US 60 [1986]; *cf. Estate of Thornton v Caldor, Inc.,* 472 US 703 [1985]).*

The religious observance clause here is readily distinguishable from that in *Matter of Port Washington Union Free School Dist. v Port Washington Teachers Assn.* (268 AD2d 523 [2000], *appeal dismissed* 95 NY2d 790 [2000], *lv denied* 95 NY2d 761 [2000]) upon which Supreme Court relied. In *Port Washington,* the commissioner of education designated which religious holidays were acceptable for paid leave, thus creating the impermissible impression that the school district favored or preferred particular religions over others (*see County of Allegheny v American Civ. Liberties Union Greater Pittsburgh Ch.,* 492 US 573, 593 [1989]). Further, we note that the clause at issue in *Port Washington* did not appear to limit the number of religious holidays that could be taken. Thus, that clause went beyond reasonable accommodation and instead rose to a level of *"[g]overnment pressure to participate in a religious activity[,] . . . an obvious indication that the government [was] endorsing or promoting religion"* (*Matter of Griffin v Coughlin,* 88 NY2d 674, 687-688 [1996], *cert denied* 519 US 1054 [1997], quoting *Lee v Weisman, supra* at 604 [Blackmun, J., concurring] [emphasis in original]). To the extent that *Port Washington* can be read to prohibit any religious observance clause as violative of the Establishment Clause, we decline to follow it. Accord-

---

* It is noteworthy that, as here, *Ansonia* dealt with a collective bargaining agreement that afforded teachers three days paid annual leave for observance of mandatory religious holidays.

ingly, the petition must be reinstated and the matter remitted to Supreme Court for further proceedings.

Cardona, P.J., Mercure and Lahtinen, JJ., concur.

Peters, J. (dissenting). I respectfully dissent. "There is no firmer or more settled principle of Establishment Clause jurisprudence than that prohibiting the use of the State's power to force one to profess a religious belief or participate in a religious activity" (*Matter of Griffin v Coughlin,* 88 NY2d 674, 686 [1996], *cert denied* 519 US 1054 [1997]; *see Matter of Port Washington Union Free School Dist. v Port Washington Teachers Assn.,* 268 AD2d 523, 524 [2000], *appeal dismissed* 95 NY2d 790 [2000], *lv denied* 95 NY2d 761 [2000]). Because the disputed contract clause* grants three extra days of paid leave only to those employees who are religiously observant, I find it to be violative of the Establishment Clause.

The contract provision fails each and every prong of the quintessential tripartite test originally declared in *Lemon v Kurtzman* (403 US 602, 612-613 [1971]; *see Lee v Weisman,* 505 US 577, 585 [1992]; *Committee for Pub. Educ. & Religious Liberty v Nyquist,* 413 US 756, 773 [1973]). Focusing solely on "anticoercion . . . an essential precept" (*Matter of Griffin v Coughlin, supra* at 688 n 6), I find that the practice promoted here results in a substantial monetary benefit only for those employees who affirm that they observe a "Sabbath or other holy day" as a "requirement" of their religion. This policy subtly coerces and pressures an employee to declare a religious belief or, "at the very least[,] influences an employee's choice as to whether to adopt and maintain a set of unquestionably religious beliefs and practices by conditioning a substantial economic benefit solely on religious exercise" (*Matter of Civil Serv. Empls. Assn. [Eastchester Union Free School Dist.],* 29 PERB ¶ 3041 [1996]). Rather than simply affording employees an opportunity to worship, it encourages and financially rewards them for doing so (*see Hunterdon Cent. High School Bd. of Educ. v Hunterdon Cent. High School Teachers' Assn.,* 174 NJ Super 468, 477, 416 A2d 980, 984-985 [1980], *affd* 86 NJ 43, 429 A2d 354 [1981]). For these reasons, I would affirm the determina-

---

* The clause provides that: "Teachers shall be allowed up to three (3) paid days for religious observance where as a requirement of his/her religion he observes his Sabbath or other holy day, including a reasonable time prior and subsequent thereto for travel between his place of employment and his home. If additional days are necessary the teacher may charge these to available personal business leave or unpaid leave if personal business days are not available. Requests for same shall be made at least five (5) days in advance on a form provided by the District."

tion of the Supreme Court which found the clause unconstitutional.

Ordered that the judgment is reversed, on the law, without costs, and matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision.