THE NEWARK FIREMEN'S MUTUAL BENEVOLENT ASSOCIA-TION, LOCAL NO. 4, PLAINTIFF-RESPONDENT, v. CITY OF NEWARK, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued January 13, 1981—Decided January 29, 1981.

240

Before Judges MICHELS, KOLE and ARD.

*Rosalind L. Bressler*, Assistant Corporation Counsel, argued the cause for appellant (*Salvatore Perillo*, Corporation Counsel, attorney).

*David I. Fox* argued the cause for respondent (*Fox and Fox*, attorneys).

*Sidney H. Lehmann*, General Counsel, argued the cause for intervenor-respondent, Public Employment Relations Commission.

The opinion of the court was delivered by

KOLE, J. A. D.

Judge Geoffrey Gaulkin entered a judgment confirming an arbitration award for the year 1979 resulting from compulsory interest binding arbitration between plaintiff Firemen's Association and the City of Newark. He held that the award was supported by substantial credible evidence and that the city's counterclaim was without merit. The counterclaim in part attacked the validity of a rule of the Public Employment Relations Commission, *N.J.A.C.* 19:16–5.7(f), that permits during the course of the compulsory arbitration proceeding, the acceptance by the arbitrator, in his discretion, of a revision of the position by either party on any issue until a hearing is deemed closed, provided that the other party is given the opportunity to respond. In the instant case the procedure set forth in this rule was followed by the arbitrator.

The City appeals on the following grounds: (1) the arbitrator's award is not supported by substantial credible evidence and thus should be reversed and (2) the award should be vacated because the arbitrator exceeded his power by permitting the plaintiff Association to revise its economic offer after commencement of arbitration.

We have considered the City's first argument on this appeal in the light of the arbitrator's award. We find no sound basis for disturbing the determination below that there was substantial credible evidence in the record supporting the award and that the arbitrator properly took into account the public interest and the impact of his decision on the public welfare as well as the other factors required by law. We cannot say that

the award was unreasonable. *See, N. J. State P. B. A., Local 29 v. Town of Irvington*, 80 *N.J* 271 (1979); *Div. 540 v. Mercer Cty. Improvement Auth.*, 76 *N.J.* 245 (1978).

We now consider the City's contention that the award must be vacated because the arbitrator exceeded his power in permitting the Association to modify its economic offer during the course of arbitration. This procedure, it is asserted, violates the following express terms of *N.J.S.A.* 34:13A–16(f)(1), part of the statute governing compulsory arbitration for police and fire departments. *N.J.S.A.* 34:13A–16(f)(1) provides:

> Prior to the arbitration proceedings, the parties shall submit to the arbitrator or tripartite panel of arbitrators, *pursuant to rules and procedures established by the commission, their final offers* in two separate parts: (a) a single package containing all the economic issues in dispute and (b) the individual issues in dispute not included in the economic package, each set forth separately by issue. (emphasis supplied)

The parties submitted offers to the arbitrator at the beginning of arbitration. As the arbitration proceeded the Association revised its economic offer downward. The arbitrator chose the last economic offer of the Association pursuant to *N.J.S.A.* 34:13A–16(d)(2) of the same statute, which provides for binding arbitration

> ... under which the award on the economic issues in dispute shall be confined to a choice between: (a) the *last offer* of the employer on such issues as a single package and (b) the employee representative's *last offer*, on such issues, as a single package; and, on the noneconomic issues in dispute, the award shall be confined to a choice between: (a)*the last offer* of the employer on each issue in dispute and (b) the employee representative's *last offer* on such issue. (emphasis supplied)

The revised offers were made pursuant to *N.J.A.C.* 19:16–5.7(f), the pertinent provisions of which are set forth above.

The City argues here and contended in the court below that this rule contravenes the statutory requirement that final offers be submitted to the arbitrator prior to arbitration. *N.J.S.A.* 34:13A–16(f)(1). The City's position is that since the statute refers to final offers, such offers cannot be revised. The City also contends that allowing revisions violates the purpose of the statute and "final offer" interest arbitration.

We agree with Judge Gaulkin's rejection of the City's contentions and his reasons therefor.

■ He properly deferred to the Commission's interpretation of the statute in view of the evident ambiguity in the legislative language. As he indicated, "final" offer in the context of the entire statute does not necessarily mean that it must be immutable. Since the statute also refers to "last" offers from which the arbitrator is to make his choice, it is not clear that the Legislature meant the final offer to be equivalent to the last offer. Thus, the Commission's rule—that offers submitted prior to arbitration may be modified until the last offer is established—is not an unreasonable interpretation of a statute whose essential purpose is to resolve disputes covered thereby expeditiously by means of mediation and compromise. This conclusion is supported by *N.J.S.A.* 34:13A–16(f)(3), which allows the arbitrator, during the "formal arbitration proceedings," to "mediate or assist the parties in reaching a mutually agreeable settlement." This provision would be meaningless if, as the City asserts, the parties are locked into the bargaining positions with which they began arbitration.

When read in relation to the legislative history of the statute (L.1977, c. 85) and to other provisions thereof, *N.J.S.A.* 34:13A–16(f)(1) means simply that the parties must enter arbitration with set proposals that may be used as reference points at the beginning but may be changed during the course of the arbitration proceedings in accordance with *N.J.A.C.* 19:16–5.7(f); and the choice must be made by the arbitrator from the parties' last offer or proposal so advanced in those proceedings. *N.J.S.A.* 34:13A–16(d)(2).

To require the parties to maintain their original offers at all times may lead to undesirable or anomalous results. *N.J.S.A.* 34:13A–16(f)(2) gives the Commission, in the event of a dispute, the power to decide which issues are economic in nature. If the Commission ruled that a particular issue was economic, for example, the parties obviously would have to revise their offers

to take this change into account. Thus, the statute itself contemplates that a degree of flexibility would be required during arbitration. We are satisfied that the Legislature did not intend that the parties be required to adhere to their original proposals even though they were to decide, during arbitration, that they would be willing to come closer to the other party's position.

Nor do we believe that permitting revisions of offers conflicts with the policy behind what is known as "final offer" arbitration as embodied in *N.J.S.A.* 34:13A–16(d). This differs from conventional arbitration in that the arbitrator may not formulate what he considers to be a fair award. Instead he must select one of the parties' offers. The theory behind this procedure is that the parties will present realistic offers since they each run the risk of having the arbitrator choose the other side's proposal. "[T]his particular form of arbitration encourages voluntary settlements by forcing the parties to tailor their proposals with an eye to the arbitrator's selection of the more reasonable submission." *N. J. State P. B. A, Local 29 v. Town of Irvington, supra,* 80 *N.J.* at 286; see also Tener, "The Public Employment Relations Commission: The First Decade," 9 *Rutgers-Camden L.J.* 609, 621–622 (1978); Public Employer-Employee Relations Study Commission, *Report to the Governor and the Legislature* at 26–27 (1976) (hereinafter referred to as "*Report*").

The City claims that allowing parties to modify their final offers during arbitration removes the impetus for negotiating a settlement. It asserts that the threat of final offer arbitration was meant to serve as a sword over the heads of the parties: the desire to avoid being locked into a final offer will encourage settlement without arbitration.

However, we agree with Judge Gaulkin that it cannot be said that the statute's sole or principal purpose was to prevent or discourage resort to arbitration. As the *Report* indicates, the

statute is directed toward establishing a procedure that would encourage the parties to narrow the issues and to resolve them if arbitration is required in such fashion that the ultimate result would be as close as possible to that which they consider appropriate and would accord with the public interest.

The procedure contemplated by the Commission's rule and followed in the instant case furthers the foregoing purpose. Here the parties' differences were narrowed through arbitration, thus resulting in a reasonable settlement. It would not be in the public interest to enforce an award at the original offer when one of the parties has since modified the offer downward.

We have concluded that the design of the legislation here involved is fostered by the provisions of *N.J.A.C.* 19:16–5.7(f) and that the rule is valid. That design would be frustrated by a construction of the statute which would mandate that the arbitrator ignore the parties' willingness to make reasonable modifications of their initial offers and instead require them to adhere to their original bargaining positions.

Affirmed.