STATE OF NEW JERSEY, DEPARTMENT OF LAW AND PUBLIC SAFETY, DIVISION OF STATE POLICE, PLAINTIFF-APPELLANT, v. STATE TROOPERS NCO ASSOCIATION OF NEW JERSEY, INC., DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued January 27, 1981—Reargued March 30, 1981.
Decided April 15, 1981.

Before Judges MICHELS, KOLE and ARD.

*Erminie L. Conley*, Assistant Attorney General, argued the cause for appellant (*John J. Degnan*, former Attorney General of New Jersey, and *Judith A. Yaskin*, Acting Attorney General of New Jersey, attorneys).

*Jerome J. LaPenna* argued the cause for respondent (*Cerreto & LaPenna*, attorneys).

*Sidney H. Lehmann*, General Counsel, argued the cause for *amicus curiae* Public Employment Relations Commission.

The opinion of the court was delivered by

KOLE, J. A. D.

In 1977 the State and the State Troopers NCO Association (NCO) entered into negotiations for a contract to succeed one that was to terminate on June 30, 1978. The parties reached an impasse over various issues. NCO initiated compulsory interest arbitration, pursuant to *N.J.S.A.* 34:13A–16, in December 1977. An arbitrator was appointed and all disputed issues were resolved except the provision concerning promotions. On January 5, 1979 the State filed a petition with Public Employment Relations Commission (PERC) for a scope of negotiations determination that the promotional article in the recently expired agreement was not a mandatory subject of negotiation. In a decision of April 4, 1979 PERC held that the provisions involving promotional procedures were mandatory subjects of negotiation but that other provisions related to promotional criteria which could not be negotiated.

Arbitration hearings were then held on the parties' proposals for new promotion provisions. Pursuant to "last offer" arbitration, the arbitrator included in the award NCO's last proposal on promotion which purported to accord with PERC's decision as to those matters relating thereto that were negotiable. See *N.J. S.A.* 34:13A–16(c)(6), (d)–(g); *Newark Firemen's Mut. Benev. Ass'n, Local No. 4 v. Newark,* 177 *N.J.Super.* 239 (App.Div.1981).

On October 22, 1979 the State filed a complaint alleging that the award exceeded the scope of the arbitrator's authority and seeking its vacation and an order directing inclusion of the State's proposal in the collective negotiations agreement. NCO filed a counterclaim requesting confirmation and enforcement of the award. The trial judge, after a hearing, entered an order dismissing the State's complaint and granting NCO's counterclaim by confirming and enforcing the arbitrator's award. The State appeals.

After the original argument of this appeal, it appeared that there might be a conflict in material respects between a PERC decision of January 9, 1981 involving a promotional article in the proposed contract of the State Troopers Fraternal Association of New Jersey, Inc. and the PERC opinion involved in the present case. Accordingly, we directed reargument and requested PERC to file an *amicus* brief, as well as to participate in the further argument. The parties were afforded the opportunity to file supplemental briefs. As indicated below, as a result of PERC's reconciliation of these opinions, some modification, by way of interpretation, is required of the provisions of NCO's last offer which was the subject of the arbitrator's award. Thus, we affirm the trial judge's confirmation of the award subject to that interpretation.

The disputed portions of the NCO offer[1] concerned promotions for the positions of Sergeants First Class, Detective Ser-

---

[1]There are additional provisions of the NCO's offer about which there is no dispute, such as the manner in which the announcement of a vacancy should

geants First Class and Lieutenants. NCO's proposal, which was included in the award, stated in pertinent part that:

A. Promotions within the Division of State Police (Division) to the rank of these officers shall be made based upon the application of relevant and reasonable criteria to be established by the Division as to each vacancy to be filled by promotion.

B. When any vacancy to be filled by promotion occurs in these positions, the Division shall announce the vacancy, "the criteria and sub-criteria and such constituent part of that criteria and sub-criteria (hereinafter referred to as 'criteria') to be met by the candidates for promotion to such vacancy or vacancies, and the particular weight to be assigned to each of the criteria announced (to be met by the candidates) which will constitute the only and exclusive basis for promotion to the vacancy or vacancies announced in accordance with provisions set forth in this article."

C. (3)(f) The announcement of any such vacancy shall contain the exact weight to be assigned to each criteria to a total weight to be assigned of 100 percentage points (100%).

D. (1) The total weight to be assigned to criteria shall be 100%.

(2) The Division shall apply the criteria to each candidate-applicant (hereafter "candidate") and shall prepare a list of such candidates as to each such position vacancy containing the names of the candidates "in order of highest to lowest total score, the total score for each candidate... [and] the parts of the total score relating to each of the criteria for each..." candidate.

(3) The candidate with the highest numerical score shall be promoted to fill the vacancy and in the event of multiple vacancies, the promotion shall be made in the order of the highest numerical scores. If the list remains effective for a period after the originally announced vacancies are filled, subsequently announced similar vacancies shall be filled from the remaining candidates on the list in the order of highest score. [E. (4) contains a similar provision].

(4) Each criteria and the weights assigned to each criteria shall remain constant during the promotion process relating to the announcement of a vacancy and shall be and remain identical for similar vacancies during the same promotion process relating to the announcement of a vacancy or vacancies.

E. (1) A reasonable time prior to the date of formal announcement by teletype and other means of communication of the promotion to the announced vacancy, the Division shall provide and deliver to the President of the NCO Association a list of candidates which shall contain the total score of each candidate, the parts of the total score relating to each of the criteria and the numerical standing of each candidate.

---

be made, the time when a vacancy announcement must be made, and the contents of the announcement of the vacancy (other than the criteria to be met and the weight to be assigned to such criteria).

(2) Each candidate shall be notified in writing of his final score and numerical standing on the aforesaid list within a reasonable time prior to the announcement of promotion.

(3) The list of candidates which shall be provided and delivered to the President of the NCO Association shall state the period during which the list shall remain in effect and during which all promotions to other identical vacancies shall be made from the list.

(5) In the event a candidate rejects promotion to a specific announced vacancy, that candidate shall continue to remain eligible for other announced vacancies for which he is qualified and in such case, the candidate with the next highest score on the list shall be promoted to the announced vacancy.

The State's proposal was along the same basic lines, but it contained no language concerning the assigning of weights to evaluate criteria or that such weights will add up to 100%; nor did it require that candidates be appointed in the order of the scores achieved as reflected on the list.

The arbitrator concluded that the provisions in NCO's proposal dealing with assigning weights and calculating a numerical score did not interfere with the State's right to establish criteria for evaluating potential promotees. The arbitrator also determined, after considering the various statutory criteria, that NCO's proposal was more equitable and more consistent with the needs of the employees than that of the State. He therefore selected the NCO's offer for inclusion in the arbitration award.

The arbitrator based his decision on the fact that section A of NCO's proposal clearly gave the Division the sole authority to establish the criteria to be used in evaluating candidates for promotion. Section B, read in conjunction with section A, set forth procedural matters dealing with the announcement by the State of its criteria. The arbitrator noted the State's objection to the language in section B concerning the assigning of weights to the criteria but he did not believe that this affected the State's right to make promotion determinations. He found that since the State was to determine the value of the weights to be assigned, there was no significant interference with management's inherent prerogative to establish government policy in regard to promotions. Thus, he concluded that section B was procedural in nature. He reached the same conclusion with

respect to section C(3)(f), which required that announcement of vacancies contain the exact weight to be assigned to each criterion to a total weight to be assigned of 100%. The arbitrator interpreted this to mean that management must inform candidates of the procedure to be followed in analyzing the criteria so as to prevent the weighing, a process that would not interfere with managerial prerogative since management would control what procedure would be used. The same analysis was applied to section D, which dealt with the promotion of the candidate with the highest score and also required that the criteria and the weights assigned to them remain constant during the promotion process for a particular vacancy. The arbitrator determined that these provisions related to fair treatment of employees: after the State had established criteria, candidates should know what they were and that they would be adhered to by the State. The arbitrator further found that the remaining provisions involved procedural requirements and did not infringe on management's rights.

In confirming the award the trial judge agreed that the challenged provisions related to procedural matters and involved terms and conditions of employment under *State v. State Supervisory Employees Ass'n*, 78 *N.J.* 54, 90–92 (1978).[2]

The arbitration between the Division and NCO where, as here, the parties had not agreed to arbitrate permissive subjects of negotiation was "limited to those subjects that are within the required scope of collective negotiations...." *N.J.S.A.* 34:13A–16(f)(4). Subjects that are within the required or mandatory scope of negotiations are "those matters which intimately and directly affect the work and welfare of public employees and on which negotiated agreement would not significantly interfere

---

[2]He also noted that PERC had determined that no statute or regulation specifically preempted negotiations over these promotion procedures, and he deferred to that determination. The State does not contend here that either the judge or PERC erred in this respect. In any event, we agree that *N.J.S.A.* 53:1–5.2 is not such a preemptive statute.

with the exercise of inherent management prerogatives pertaining to the determination of governmental policy." *State v. State Supervisory Employees Ass'n, supra,* 78 *N.J.* at 67; *Hunterdon Central High School Bd. of Ed. v. Hunterdon Central High School Teachers Ass'n,* 174 *N.J.Super.* 468, 473–474 (App. Div.1980). It is settled that while promotion criteria are not mandatorily negotiable, promotional procedures are. *State v. State Supervisory Employees Ass'n, supra* at 90; *Fair Lawn Bd. of Ed. v. Fair Lawn Ed. Ass'n,* 174 *N.J.Super.* 554, 558 (App.Div. 1980).

The State attacks the determination of the arbitrator and trial judge that the provisions in question involve promotional procedures rather than criteria. The State admits that the NCO proposal gives the Division the sole discretion, in evaluating candidates for promotion, to select the criteria and the percentage values to be assigned thereto, but claims that it dictates the manner in which the criteria must be applied, thereby infringing on a nonnegotiable managerial prerogative.

The issue thus raised by the State of whether the NCO offer substantially impinges on promotional criteria or is merely procedural in nature is such that we believe we should defer to the expertise of PERC in the area of scope of negotiations to the extent that its determination is not contrary to law. *See State v. State Supervisory Employees Ass'n, supra,* 78 *N.J.* at 83–84.

So viewed, we have no difficulty in agreeing with PERC and the arbitrator that the following provisions of NCO's offer are procedural in nature and do not significantly interfere with the exercise of inherent management prerogatives: sections B and C(3)(f), which require that announcements of vacancies contain the exact weight to be assigned to each criterion to a total weight of 100%; D(1), which requires that the total weight assigned to criteria be 100%; D(2), which requires the application of the criteria to each candidate and a list of their names in the order of highest to lowest score and showing the parts of the total score relating to each of the criteria as to each candidate,

and D(3), to the extent that it provides that, *if* a promotion is made from a list resulting from an announced vacancy, the candidate with the highest numerical score shall be promoted to fill the vacancy, and *if* there is more than one promotion that is actually made, promotions must be in the order of the highest numerical scores.

The objections raised by the State to the assignment of numerical values to the criteria it adopts do not support its contention that its managerial prerogative with respect to evaluative judgment as to promotions would be adversely affected by the provisions we have discussed and construed. The State overlooks the fact that the Division, unilaterally and in its sole discretion, will be selecting the actual promotional criteria and will be determining the percentage value to attribute to each of them. Thus, with respect to candidates for promotion, it is free to establish standards involving its own assessments of subjective factors—*e. g.*, intelligence, courage, ability to deal with people—as well as objective criteria—*e. g.*, seniority, experience—and to attribute as high or low a percentage to the subjective or objective criteria, respectively, as it deems fit. It may also establish different standards and values relating to each type of job opening. We do not agree with the State that the mandated use of a numerical system based on a scale of 100 is analogous to a requirement that a written examination be given. PERC has held that whether a written examination shall be given involves a managerial function relating to the establishment of criteria and that that determination, together with the type, administration and scoring of the examination, is a necessary extension of the management decision. Unlike the matter of written examinations, however, the Division here is not compelled to use a particular method of evaluation. It satisfies the NCO proposal as long as (1) it announces in advance the promotional criteria it plans to use and the relative weight to be attached to each of them, and (2) if it makes a promotion or promotions from the list resulting from such vacancy an-

nouncement, it selects the candidate or candidates with the highest numerical scores predicated thereon.

■ That NCO proposal merely permits candidates for promotion truly to know the basis upon which they will be evaluated. Without being aware of what is expected of them for promotion and the weight to be given to each criterion, they will be unable to prepare and conduct themselves accordingly and will not be in a position to understand how the promotional decision was made. The Division's desire to have the freedom to use a more generalized approach, predicated on overall judgmental evaluation of the individual's qualifications under basic criteria, does not satisfy that reasonable need of the employees.

■ What we have said, however, as to the applicability of the criteria and their weight to candidates for promotion involves a mandatorily negotiable matter only if the Division in fact decides to promote from the list resulting from the vacancy announcement. It cannot and does not mean that the application of any criterion by way of the evaluative judgment of a candidate's mastery thereof is in any sense negotiable. The measurement of an employee's competence or satisfaction of the criteria is purely for management; and whether a high score on a list resulting from a particular vacancy announcement justifies any promotion therefrom is also a discretionary matter for the Division.

We thus must consider those provision of the NCO offer which need clarification or interpretation in order to be considered as negotiable and as properly includable as part of the negotiated agreement.

■ The Division may not be required to make all promotions from the list since such a provision binds the State not to change the criteria or method of selection for the term of the contract. As indicated, the State remains free to unilaterally alter the criteria or method of selection, provided it complies with any notice provisions agreed upon. Since it may not use a particular

list and may adopt different criteria from those used in compiling the list in another examination for the same type of promotional position, the requirement that it make all promotions from a continuously maintained list is nonnegotiable. This should be distinguished from the Division's actually maintaining and utilizing a list during the period when it has announced no changes in the promotion system. *Compare Schroder v. Kiss*, 74 *N.J.Super.* 229, 240 (App.Div.1962).

In our view a provision that would require the Division to select any person on the list, including the one with the highest score or, in the event of more than one vacancy, the next highest, substantially impinges on managerial prerogative to promote only *qualified* candidates. Thus, even after announcing a vacancy with specific criteria and numerical weights attached thereto, the Division has the discretion, after promulgating the list, to determine that a promotion need not be made at all. For example, it may determine that the highest score has not produced a sufficiently qualified person to justify a promotion; or it may decide that although there are four vacancies for a position, the listed scores have only produced two who are qualified, in which event it will be required to select only the two with the highest scores. It may at any time change the criteria and weights for a promotion as to a particular position after it has announced the same or as to a subsequent vacancy for that type of position, provided the required notification thereof is given to NCO.

Accordingly, the following provisions of the NCO offer are negotiable and may be part of the negotiated contract only if construed in the manner we have outlined: (I) all promotions must be made from the list compiled after the vacancy announcement, the candidate with the highest numerical score shall be promoted to fill a vacancy and, where there are multiple vacancies, the promotion shall be made in the order of the highest numerical scores (sections D(3) and E(4)); (II) if the list remains effective for a period after the originally announced

vacancies are filled, subsequently announced similar vacancies shall be filed from the remaining candidates on the list in the order of highest score (sections D(3), E(3) and E(4)); (III) each criterion and the weight assigned thereto shall remain constant during the promotion process relating to the announcement of a vacancy and shall remain identical for similar vacancies during the same promotion process relating to the announcement of a vacancy (D(4)), and (IV) if a candidate rejects promotions, the candidate with the next highest score on the list shall be promoted to the vacancy (E(5)).[3]

The conclusion we have reached is supported not only by the strong dicta in *State v. State Supervisory Employees Ass'n, supra,* 78 *N.J.* at 90, 92, 96, but also by *State Troopers Fraternal Ass'n v. State,* 62 *N.J.* 302, 304–305 (1973). It is also consistent with the balancing test approach to scope questions adopted in *Woodstown-Pilesgrove School Dist. Bd. of Ed. v. Woodstown-Pilesgrove Ed. Ass'n,* 81 *N.J.* 582 (1980).

In the *State Supervisory* case the court indicated that a person who meets all of the criteria and qualifications established by the employer has a legitimate expectation that he will at least be eligible for consideration for promotion, and that, accordingly, any restriction on *qualified* persons who are barred from such consideration is negotiable. That matter, it concluded was clearly consistent with merit and fitness and did not impinge on any legitimate policy-making powers of government. It further said that a provision that employees be appointed in the order in which they are listed in a promotional listing involved a mandatory term and condition of employment, since it did not attempt to dictate criteria for arriving at a rating and to the extent that the persons on the list to be selected were *"clearly qualified,"* the proposal was procedural in nature and did not bear on criteria for promotion. (Emphasis supplied.) It

---

[3]Our determination as to the required interpretation and clarification of the NCO offer in order to make it appropriate for inclusion in the agreement is consistent with PERC's position on this appeal, as we understand it to be.

asserted that "non-negotiable criteria of promotion deal with qualifications bearing on ability to do the job, as these matters go to the substantive question of the fitness of an employee for a given position." *Id.* at 92. Additionally, the court stated that a publication of the total score and all the elements of the total score for all promotional examinations was a procedural promotional matter that was mandatorily negotiable as a term and condition of employment. In the *State Troopers* case, which was decided without regard to the PERC statute, the court said:

> While the very concept of the unclassified service necessarily implies discretion in the appointing power, it is always desirable, even if not legally required, for that authority, especially in a body as large as the State Police and where membership morale is so important, to announce in advance the considerations for promotion insofar as they may reasonably be articulated and to give the opportunity, unless definitely infeasible, to a man to be advised of why he was not considered eligible for or failed of promotion. [62 *N.J.* at 304–305]

*See, also, Fair Lawn Bd. of Ed. v. Fair Lawn Ed. Ass'n, supra,* 174 *N.J.Super.* at 557–558; *In re Byram Tp. Bd. of Ed.,* 152 *N.J.Super.* 12, 26 (App.Div.1977).

We thus affirm the determination and judgment below with the clarifications indicated in this opinion.

We need not decide whether the arbitrator's asserted lack of authority under the statute to alter either proposal precluded his endeavoring to have NCO clarify its offer in a manner such as is suggested in this opinion. *See Newark Firemen's Mut. Benev. Ass'n, Local No. 4 v. Newark, supra.* In any event, we perceive no such limitation on our authority in view of *N.J.S.A.* 34:13A–16(f)(4) and (5). These provisions limit arbitration to those subjects that are within the required scope of collective negotiations, a legal question which we are authorized to decide. They also provide that the arbitrator's decision shall be final and binding and confirmed by the court except where, as here, there is a basis for modifying or correcting the award pursuant to *N.J.S.A.* 2A:24–7 *et seq.* or by reason of the failure to apply the factors set forth in *N.J.S.A.* 34:13A–16(g), such as the "lawful authority of the employer" [(g)(5)].